**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**RICHARD WALKER**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**AARON J. SPOLARICH**
Deputy Attorney General
Indianapolis, Indiana

FILED

Mar 14 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JACOB LOCKRIDGE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 48A02-1104-CR-383 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MADISON SUPERIOR COURT
The Honorable Dennis D. Carroll, Judge
Cause No. 48D01-1105-FB-76

**March 14, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Following a jury trial, Appellant-Defendant Jacob Lockridge was convicted of two counts of Class B felony Child Molesting[1] and sentenced to an aggregate term of thirty-two years in the Department of Correction with six years suspended to probation. Upon appeal, Lockridge claims that certain evidence admitted against him at trial violated Indiana Evidence Rule 404(b). Lockridge additionally challenges his sentence by claiming that it is inappropriate and that the trial court abused its discretion in considering certain aggravating circumstances to enhance his sentence and impose consecutive terms. We affirm.

## FACTS AND PROCEDURAL HISTORY

In the summer of 2008, M.B., who was nine years old at the time, spent approximately two weekends per month at her father's home. Lockridge, who was M.B.'s father's wife's nephew, sometimes stayed at the home as well. Lockridge was twenty years old at the time. At some point that summer, M.B., who had fallen asleep in one of the bedrooms in the home, awoke to find Lockridge beside her with his finger inside her vagina. M.B., who was wearing a T-shirt, boxer shorts, and underwear at the time, felt pain. M.B. left the room and stayed in the laundry room the rest of the night.

Approximately a week later, M.B., who had again worn clothes to bed, awoke to find herself naked, with Lockridge on top of her, putting his penis into her vagina. At the time Lockridge asked M.B. why she was doing this to him. He also hit M.B. in the chest, told her he loved her and claimed they would have many children together and be happy. Lockridge, who squeezed his penis throughout the act, later removed it and

[1] Ind. Code § 35-42-4-3(a) (2008).

ejaculated on the bed.  M.B. left the house and spent the night in her father's truck parked in the driveway.

In 2010, M.B. confided in a friend about the incidents, and authorities were notified.  Subsequent medical examinations of M.B. revealed that she had two injuries to her hymen.  According to sexual assault nurse examiner Holly Renz, it is unusual to see such injuries after a period of two years has passed.

On May 6, 2010, the State charged Lockridge with two counts of Class B felony child molesting (Counts I and III) and one count of Class C felony child molesting. (Count II).  Count II was subsequently dismissed, and Counts I and III were tried to a jury on March 22-24, 2011.  At trial, Lockridge testified in his defense.  In cross-examining him, the State was permitted to inquire, over defense objection, about several entries Lockridge had made on his MySpace page regarding his urge to have sex.  These entries included the following statements, some of which were accompanied by statements indicating that Lockridge was in a "horny as h***" mood:  "Any females trying to f***?"; "trying to find some female that will let me tear that monkey the h*** up"; "needing to f*** bad like my life depends on it"; "f***ing horny and can't do anything about it"; and "looking for some p****." Tr. pp. 383-87.[2]

The jury found Lockridge guilty as charged.  The trial court entered judgment of conviction and sentenced Lockridge to consecutive sentences of sixteen years in the Department of Correction for each count, with twenty-six years executed and six years

---

[2] The trial court permitted cross-examination on the content of the MySpace pages but did not admit the exhibit containing copies of the MySpace pages.  The quotations are from the transcript and may vary, in insignificant ways, from some of the MySpace entries in State's Exhibit 5.

suspended to probation. In reaching this sentence, the trial court considered as aggravators Lockridge's criminal history, his breach of trust, and his multiple offenses against a single victim. The trial court considered as a mitigator Lockridge's abusive and dysfunctional upbringing. This appeal follows.

## DISCUSSION AND DECISION

Upon appeal, Lockridge challenges the trial court's admission of his MySpace entries by claiming that they violate Indiana Evidence Rule 404(b). Lockridge also challenges his sentence on several bases.

### I.    Rule 404(b)

The admission of evidence is left to the sound discretion of the trial court, and this court will not reverse that decision absent an abuse of discretion. *Weis v. State*, 825 N.E.2d 896, 900 (Ind. Ct. App. 2005). An abuse of discretion occurs when trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

Indiana Evidence Rule 404(b) provides as follows, in pertinent part: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Evidence is excluded under Rule 404(b) when it is introduced to prove the "forbidden inference" of demonstrating the defendant's propensity to commit the charged crime. *Clark v. State*, 915 N.E.2d 126, 129-30 (2009), *reh'g denied*.

In *Clark*, the admission into evidence of a defendant's MySpace postings was similarly attacked on Rule 404(b) grounds. The defendant, who was convicted of murdering a two-year-old child, had written various prideful declarations regarding his

4

reputation as an "outlaw and criminal" who could "do it and get away." *Clark*, 915 N.E.2d at 129. In rejecting the defendant's 404(b) challenge, the *Clark* court reasoned that the posting contained only the defendant's statements about himself and in reference to himself; it was not a crime, wrong, or act and therefore did not fall under Rule 404(b). *Id.* at 130. As the *Clark* court held, the MySpace postings placed the defendant's words at issue, not his deeds, so they were not inadmissible pursuant to Rule 404(b). *Id.*

Similarly here, Lockridge's sexual musings on MySpace are not past deeds. They are merely statements by Lockridge about himself and in reference to himself, specifically his sexual urges. Under *Clark* they are merely evidence of Lockridge's own statements and neither covered nor barred by Rule 404(b). *See id.* We find no abuse of discretion.[3]

## II. Sentencing

### A. Aggravating Factors

Lockridge challenges the trial court's consideration of various aggravators in imposing his sentence. Under the current sentencing scheme, "the trial court must enter a statement including reasonably detailed reasons or circumstances for imposing a particular sentence." *Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007), *modified on other grounds on reh'g,* 875 N.E.2d 218 (Ind. 2007). We review the sentence for an abuse of discretion. *Id.* at 490. An abuse of discretion occurs if "the decision is clearly

---

[3] This conclusion is not to say that the evidence, which may qualify as depraved sexual instinct evidence, was not inadmissible on other grounds. For purposes of this appeal, Lockridge confines his challenge to Rule 404(b).

5

against the logic and effect of the facts and circumstances." *Id.* (internal quotation omitted).

A trial court abuses its discretion if it (1) fails "to enter a sentencing statement at all[,]" (2) enters "a sentencing statement that explains reasons for imposing a sentence— including a finding of aggravating and mitigating factors if any—but the record does not support the reasons," (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration," or (4) considers reasons that "are improper as a matter of law." *Id.* at 490-91. If the trial court has abused its discretion, we will remand for resentencing "if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491. However, under the current statutory scheme, the relative weight or value assignable to reasons properly found is not subject to review for abuse of discretion. *Id.* We may review both oral and written statements in order to identify the findings of the trial court. *See McElroy v. State*, 865 N.E.2d 584, 589 (Ind. 2007).

### 1.    Criminal History

Lockridge first challenges the trial court's consideration of his criminal history as an aggravating factor. Lockridge claims that his juvenile history is relatively minor and remote in time and that his adult convictions for marijuana possession and resisting law enforcement occurred after the current offenses and should not be included in his criminal history.

In considering Lockridge's criminal history, the trial court stated as follows:

6

> So on the aggravators, there is some modest criminal and juvenile history. It would be dishonest that there is a, a, great criminal history. It's just not true. There is a series of shopliftings and a contemporaneous marijuana possession charge. It's a history, it's repetitive behavior that's criminal. But it is not an egregious criminal history. But there is some aggravation. I think the most compelling aggravation is both the bre[a]ch of trust and the multiple offenses against a single young victim.

Tr. p. 517.

While Lockridge's criminal history may have been relatively minor, the trial court was fully aware of this, and its order specifically minimizes the importance of this factor. To the extent Lockridge would have this court treat the factor as somehow more minimal, this is essentially a request that it reconsider the relative weight of the factors, which it does not do. *See Anglemyer*, 868 N.E.2d at 491. Further, while the trial court may have erroneously included Lockridge's marijuana offense, which occurred after the instant offenses, as part of his criminal history, this does not erase the fact that he had a criminal history. Even a limited criminal history can be considered an aggravating factor. *Atwood v. State*, 905 N.E.2d 479, 488 (Ind. Ct. App. 2009), *trans. denied*. We find no abuse of discretion.

### 2. Multiple Offenses

Lockridge additionally challenges the trial court's finding as an aggravating circumstance the fact that he had committed "multiple offenses against a single young victim." Tr. p. 517. Lockridge challenges this factor by claiming that the age of his victim was an element of his crime and could not have been used as an aggravating factor. As the State points out, the gravamen of this aggravator was not the age of the victim but the fact that she had been subjected to multiple offenses. As the trial court

7

emphasized, in summarizing its consideration of this factor, "And so the bre[a]ch of trust and then multiple offenses against the same victim I, I consider to be aggravators." Tr. p. 518. The fact that Lockridge committed multiple offenses against M.B. is a valid aggravating factor. *See McDonald v. State*, 868 N.E.2d 1111, 1114 (Ind. 2007) ("The law is settled that the fact of multiple crimes is a valid aggravating factor."). We find no abuse of discretion.

### 3.    Position of Trust

Lockridge also challenges the trial court's consideration of his position of trust with M.B. as an aggravating factor. Lockridge claims that this is an improper aggravating factor because he did not have care, custody, or control over M.B.

Indiana Code section 35-38-1-7.1(a)(8) (2008) provides that the trial court may consider as an aggravating circumstance the fact that the defendant was in a position having care, custody or control of the victim. "A position of trust exists where a defendant has 'more than a casual relationship with the victim and has abused the trust resulting from that relationship.'" *Amalfitano v. State*, 956 N.E.2d 208, 211 (Ind. Ct. App. 2011) (quoting *Rodriguez v. State*, 868 N.E.2d 551, 555 (Ind. Ct. App. 2007)). "'Generally, cohabitation arrangements of nearly any character between adults do in fact, and should, establish a position of trust between the adults and minors living or staying together.'" *Id.* (quoting *Rodriquez*, 868 N.E.2d at 555).

In considering this factor, the trial court stated as follows:

I think the most compelling aggravation is both the bre[a]ch of trust and the multiple offenses against a single young victim. [Defense counsel] is probably correct that most of these offenses do happen in a situation where

8

there is a bre[a]ch of trust. Of course I would make the argument that, that makes crime much more egregious actually. And it's not an element and so therefore it seems to me it's appropriate for it, it to be an aggravator, the bre[a]ch of trust, because that's when children are most vulnerable with people in the family and in the extended family and so forth. And so the bre[a]ch of trust and then multiple offenses against the same victim I, I consider to be aggravators.

Tr. pp. 517-18.

Here, Lockridge, whose aunt was married to M.B.'s father, sometimes stayed at M.B.'s father's home, where M.B. stayed on weekends about twice a month. According to M.B.'s mother, Lockridge stayed at the home "quite a bit." Tr. p. 235. The not-infrequent basis upon which Lockridge and M.B. spent the night in the same home, coupled with the fact that they were both part of the same extended family, supports the trial court's conclusion that Lockridge held a position of trust over M.B. We find no abuse of discretion.

### B.    Consecutive Sentences

Lockridge further claims that the trial court abused its discretion by using the same aggravating factor to impose both enhanced and consecutive sentences. There were three aggravating circumstances in this case, and the trial court did not specify which were used to enhance the sentences and which were used to impose consecutive sentences. But the trial court had no duty to do so, nor was it prohibited from using the very same circumstances for both functions. *See Blanche v. State*, 690 N.E.2d 709, 716 (Ind. 1998) ("[T]here is neither any prohibition against relying on the same aggravating circumstances both to enhance a sentence and to order it served consecutively, nor any requirement that the trial court identify the factors that supported the sentence

9

enhancement separately from the factors that supported consecutive sentences."). We find no abuse of discretion.

## C.    Appropriateness

Lockridge also challenges the appropriateness of his thirty-two-year sentence. In doing so, Lockridge points to his abusive and unstable childhood and to his early diagnoses of attention deficit hyperactivity disorder and mild mental retardation. In light of these factors, together with his claimed young age of twenty, Lockridge contends that his sentence is inappropriately harsh.

Article VII, Sections 4 and 6 of the Indiana Constitution "'authorize[] independent appellate review and revision of a sentence imposed by the trial court.'" *Anglemyer*, 868 N.E.2d at 491 (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006) (emphasis and internal quotations omitted)). Such appellate authority is implemented through Indiana Appellate Rule 7(B), which provides that the "Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." We exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires that we give "due consideration" to that decision and because we recognize the unique perspective a trial court has when making sentencing decisions. *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). It is the defendant's burden to demonstrate that his sentence is inappropriate. *Childress*, 848 N.E.2d at 1080.

Lockridge committed two Class B felony offenses of child molestation. Pursuant to Indiana Code section 35-50-2-5 (2008), a person who commits a Class B felony is subject to a sentence ranging from six years to twenty years, with the advisory sentence being ten years. Lockridge received an aggregate sentence of thirty-two years, with twenty-six years executed in the Department of Correction. Accordingly, his sentence was enhanced, but he did not receive the maximum sentence.

There can be no question that Lockridge has faced significant difficulties in his life. As the trial court observed:

> But I think [defense counsel] is absolutely correct that it is not appropriate for us to ignore the socio-psychological damage that occurs in a highly dysfunctional and abusive family. And if you don't think that's the family that Mr. Lockridge lived in, then you need to read the PSI or know a little bit about what we have learned during the progress, progress of these proceedings. It doesn't excuse his behavior. There are a lot of people who come from very, very difficult homes who rise above that, but it doesn't help. And I think it's, in fairness to Mr. Lockridge, his lawyer has every right to ask us to give some consideration to that and the Court intends to do so.

Tr. p. 518. But the fact of his difficulties is reflected in his non-maximum sentence. Lockridge committed particularly heinous crimes against a nine-year-old child. His acts were perverse and violent enough to leave physical injuries to the child's sex organs two years later and emotional injuries to last a lifetime. While Lockridge may have certain mental limitations, his testimony at trial and comments in the PSI[4] and, indeed, on his MySpace page, demonstrate a reasonable level of competence. Further, it is not as

---

[4] Regarding his youth, Lockridge states that "I shouldn't have been the child I was. I was always running around, doing what I wanted to do. I didn't care. I should have stayed home." Appellant's App. p. 232. Regarding his sentence, Lockridge requests only that he not be "max[ed] out." Appellant's App. p. 234.

though Lockridge has led a law-abiding life up to this point. He has a juvenile history for repeated acts of criminal conversion, and he admittedly smokes marijuana. We are not convinced that his thirty-two-year sentence, with twenty-six years executed, is inappropriate.

The judgment of the trial court is affirmed.

KIRSCH, J., and BARNES, J., concur.