**Michael J. WEIS, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 26A01–0409–CR–410.**

Court of Appeals of Indiana.

April 20, 2005.

898

⚿34(1)

☞34(1)

Nita Davidson Schleter, Fort Branch, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Michael J. Weis ("Weis") appeals his convictions for two counts of Child Molesting, as Class A felonies.[1] We affirm.

### Issues

Weis raises four issues, which we expand, reorder and restate as the following five issues:

I. Whether the trial court erred in admitting evidence of:

  A. Hearsay medical notes; or

  B. Improper vouching evidence;

II. Whether the admission of evidence contrary to the Protected Persons Statute, Indiana Code Section 35–37–4–6 constituted fundamental error;

III. Whether the State's closing argument constituted misconduct;

IV. Whether sufficient evidence supports his conviction; and

V. Whether Weis's concurrent forty-year enhanced sentences violate his Sixth Amendment rights outlined in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403.

### Facts and Procedural History

On March 21, 2003, the Gibson County Division of Family and Children ("GCDFC") removed seven-year-old J.S. and her half-brother from the home of her mother and Weis, J.S.'s stepfather, after receiving complaints about unsanitary conditions at the home. When interviewed about returning to the Weis's home, J.S. told Juanita Working, the Director of Gibson County CASA, that Weis had molested her. J.S. later described to Gibson County Sheriff's Deputy Deborah Borchelt ("Deputy Borchelt") a pattern of abuse by Weis that began when J.S. was three years old. J.S. told Deputy Borchelt that Weis re-

1. Ind.Code § 35–42–4–3.

peatedly engaged in vaginal, anal, and oral sex with J.S. J.S. also stated that Weis's penis looked like a mushroom with a stem, and described how there were "a ton [of freckles] on the mushroom part." Appellant's App. at 563.

The State charged Weis with four counts of child molesting, two as Class A felonies and two as Class C felonies, and one count of Rape, a Class B felony.[2] Following a jury trial, Weis was convicted on all counts. Due to double jeopardy concerns, the trial court entered judgment only upon the two convictions for child molesting as Class A felonies. Following the sentencing hearing, the trial court imposed an enhanced sentence of forty-years imprisonment on each count, to be served concurrently. This appeal ensued.

## Discussion and Decision

### I. Admission of Evidence

#### A. Standard of Review

■ The admission of evidence is "left to the sound discretion of the trial court, and we will not reverse that decision except for an abuse of that discretion." *Mann v. Russell's Trailer Repair, Inc.*, 787 N.E.2d 922, 926 (Ind.Ct.App.2003) (quoting *State v. Snyder*, 594 N.E.2d 783, 787 (Ind.1992)), *trans. denied.* An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

#### B. Analysis

Weis argues that the trial court abused its discretion by: (1) admitting medical notes taken by a hospital nurse but introduced during an examining physician's testimony and (2) admitting testimony of Deputy Borchelt and case manager Anne Sulawske ("Sulawske") intended to bolster the victim's testimony. We address each issue in turn.

#### 1. Medical Notes

■ Weis first argues that the trial court erred in admitting State's Exhibit 2, which was a copy of a medical record made on May 27, 2003, contending that the exhibit contains inadmissible hearsay evidence that invades the province of the jury. State's Exhibit 2 contains margin notes made by a pediatric center nurse, which states: "Molested by step dad Michael Weis. [H]as been happening off + on since pt was 3 yrs old. [L]ast occurrence was in March...." Appellant's App. at 296.

Initially we note that although Weis objected to the introduction of State's Exhibit 2, he did not object when Dr. Joseph Lazzarra read the margin notes to the jury from State's Exhibit 2, and thus, waived any error as to Dr. Lazzarra's testimony. *Reeves v. Boyd & Sons, Inc.*, 654 N.E.2d 864, 876 (Ind.Ct.App.1995), *trans. denied.* Waiver notwithstanding, Dr. Lazzarra testified that the medical record was made at the time the nurse interviewed J.S. as part of a typical intake evaluation conducted at his office. Had Weis made a timely objection, the trial court could have admitted State's Exhibit 2 as a business record.[3] *See* Ind. Evidence R. 803(6). Further, as the trial court explained for the jury, the margin notes did not constitute hearsay

2. Ind.Code 35–42–4–1.

3. The nurse who interviewed J.S. did not testify at trial. As such, the statements made by J.S. for purposes of medical diagnosis could not be offered as an exception to the hearsay rule under Indiana Evidence Rule 803(4). However, because the statements were re- corded in the regular course of business, i.e., medical profession, were made at or near the time the information was transmitted by J.S., and it was part of the regular practice of the nurse to make the record, the record, as opposed to the statement, is admissible under Indiana Evidence Rule 803(6).

because they were introduced to explain why the doctor conducted his physical examination, not for the truth of the statement. *See* Appellant's App. at 294. Accordingly, the trial court did not abuse its discretion in admitting State's Exhibit 2.

### 2. Vouching Testimony

Weis next argues that the testimony of two State witnesses included improper vouching testimony concerning J.S.'s truthfulness, in violation of Indiana Evidence Rule 704(b), which provides: "Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." To support his argument, Weis cites *Jones v. State,* 581 N.E.2d 1256, 1258 (Ind.Ct.App.1991), *abrogated on other grounds by Steward v. State,* 652 N.E.2d 490 (Ind.1995).

In *Jones,* this Court reversed Jones' conviction for child molesting when the trial court allowed, over objection, a police officer to affirmatively answer the question posed by the prosecutor: "In your professional opinion, was [K.J.] sexually molested?" *Jones,* 581 N.E.2d at 1258. We found that the officer's affirmative answer impermissibly invaded the province of the jury. *Id.*

■ Here, Deputy Borchelt testified: "After speaking with [J.S.] I believed that we had evidence of several counts of child molesting, with the different levels of child molesting, your A felony and your C felony. [J.S.] had discussed force and fear and so I believed we possibly had a rape charge in there also." Appellant's App. at 270. Further, Sulawske testified, regarding whether J.S. had been allowed to see Weis after alleging abuse: "Well, certainly with

the alleged perpetrator being her stepfather, there is no contact. This is a person who has caused great damage so we don't have any contact." Appellant's App. at 339. Weis contends that their testimony invaded the province of the jury to assess J.S.'s truthfulness.

We must first note that although Weis claims that he made a timely objection, our review of the record reveals that is not the case, and hence, Weis's argument is waived. *See Impson v. State,* 721 N.E.2d 1275, 1280 (Ind.Ct.App.2000). Waiver notwithstanding, neither the testimony of Deputy Borchelt nor Sulawske constitutes an impermissible invasion of the jury's province. Deputy Borchelt explained the course of the investigation after speaking with J.S., and did not specifically state that she believed J.S. Sulawske's testimony explained the GCDFC protocol on restricting visitation between an alleged abuser and victim. This testimony does not run afoul of Rule 704(b). Accordingly, there was no error in the admission of this evidence.

### II. Protected Persons Statute

Weis also argues that the trial court erred in admitting previously recorded statements of J.S. contrary to the procedures outlined by the Protected Persons Statute, Indiana Code Section 35–37–4–6,[4] which provides, in pertinent part:

(a) This section applies to a criminal action involving the following offenses where the victim is a protected person under subsection (c)(1) or (c)(2):

(1) Sex crimes (IC 35–42–4).

\* \* \* \* \*

(c) As used in this section, "protected person" means:

---

4. Weis contends that in addition to the prior recorded statements, the trial court erroneously admitted a photograph of Weis's genitalia and a photograph of mushrooms. Weis fails to present meaningful argument how these exhibits fall under Indian Code Section 35–37–4–6. Accordingly, we do not address the admissibility of these exhibits.

(1) a child who is less than fourteen (14) years of age;

\* \* \* \* \*

(d) A statement or videotape that:

(1) is made by a person who at the time of trial is a protected person;

(2) concerns an act that is a material element of an offense listed in subsection (a) or (b) that was allegedly committed against the person; and

(3) is not otherwise admissible in evidence;

is admissible in evidence in a criminal action for an offense listed in subsection (a) or (b) if the requirements of subsection (e) are met.

(e) A statement or videotape described in subsection (d) is admissible in evidence in a criminal action listed in subsection (a) or (b) if, after notice to the defendant of a hearing and of the defendant's right to be present, all of the following conditions are met:

(1) The court finds, in a hearing:

(A) conducted outside the presence of the jury; and

(B) attended by the protected person; that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability.

(2) The protected person:

(A) testifies at the trial; or

(B) is found by the court to be unavailable as a witness for one (1) of the following reasons:

(i) From the testimony of a psychiatrist, physician, or psychologist, and other evidence, if any, the court finds that the protected person's testifying in the physical presence of the defendant will cause the protected person to suffer serious emotional distress such that the protected person cannot reasonably communicate.

(ii) The protected person cannot participate in the trial for medical reasons.

(iii) The court has determined that the protected person is incapable of understanding the nature and obligation of an oath.

\* \* \* \* \*

(g) A statement or videotape may not be admitted in evidence under this section unless the prosecuting attorney informs the defendant and the defendant's attorney at least ten (10) days before the trial of:

(1) the prosecuting attorney's intention to introduce the statement or videotape in evidence; and

(2) the content of the statement or videotape.

\* \* \* \* \*

We note that Weis failed to object at trial on the basis of Indiana Code Section 35–37–4–6, and hence, waived any error in the admission of the exhibits. *See Poffenberger v. State,* 580 N.E.2d 995, 997 (Ind.Ct.App.1991), *trans. denied.* Nevertheless, Weis argues that the trial court's admission of evidence contrary to Indiana Code Section 35–37–4–6 constituted fundamental error. The fundamental error exception to the waiver rule is an extremely narrow one. *Boesch v. State,* 778 N.E.2d 1276, 1279 (Ind.2002), *reh'g denied.* To constitute fundamental error, the error must be a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process. *Bostick v. State,* 773 N.E.2d 266, 271 (Ind.2002) (internal quotation and citation omitted), *reh'g denied; see also Barany v. State,* 658 N.E.2d 60, 64 (Ind.1995) (defining fundamental error as error "so

prejudicial to the rights of the defendant as to make a fair trial impossible").

■ Weis first argues that the trial court erred in admitting the prior recorded statements because the State failed to give the requisite ten days notice, contrary to Indiana Code Section 35–37–4–6(g). The State filed its first witness and exhibit list on May 28, 2004, listing "Video/audio tape of interview of [J.S.]." Appellant's App. at 28. On July 29, 2004, four days prior to the trial commencement on August 2, 2004, the State filed its second amended witness and exhibit list, which added "Note handwritten by [J.S.] on 5/14/03" and "Transcription of interview with [J.S.] by Deputy Deborah Borchelt on 3/15/04," and specified that the video/audio tape interview referenced in the original witness and exhibit list had occurred on May 14, 2004. Thus, with respect to the interview conducted on May 14, 2004, Weis had sufficient notice under Indiana Code Section 35–37–4–6(g), and has demonstrated no error. *See Poffenberger,* 580 N.E.2d at 997.

With respect to the handwritten note and the transcript of the March 15, 2004 statement, although the State did not provide notice that it was intending to utilize the exhibits within the ten-day limit, Weis has failed to show how he was prejudiced by the State's delay. Weis argues in his brief that the exhibits themselves were extremely prejudicial to his case. However, Weis does not argue that he did not have access to the exhibits more than ten days prior to trial. Indeed, the trial court's November 25, 2003 entry indicates that the State furnished the evidentiary materials to Weis. Accordingly, we cannot say that the State's delay in notifying Weis was so prejudicial as to make a fair trial impossible.

■ Weis next argues that the trial court improperly admitted the prior recorded statements without first conducting a hearing under Indiana Code Section 35–37–4–6(e). Here, J.S. was interviewed by a detective regarding the molestation. The two interviews were recorded. J.S. also made the following written statement during the interview on May 14, 2003: "He has been sticking his privates up my behind and down my throaht [sic]." Appellant's App. at 266. Because J.S. testified at trial, these recorded statements are not the only direct evidence of the events. Without deciding whether the recorded statements were properly admitted, the trial court's admission of the prior recorded statements were cumulative to J.S.'s trial testimony. *See Pierce v. State,* 677 N.E.2d 39, 45 (Ind.1997); *Willis v. State,* 776 N.E.2d 965, 968 (Ind.Ct.App.2002). Therefore, any error alleged by Weis regarding admissibility did not rise to the level of fundamental error. *See Grundy v. State,* 695 N.E.2d 167, 171–72 (Ind.Ct.App. 1998) (holding that the admission of cumulative testimony was not fundamental error).

### III. Prosecutorial Misconduct

■ A claim of prosecutorial misconduct requires a determination that there was misconduct by the prosecutor and that it had a probable persuasive effect on the jury's decision. *Cox v. State,* 696 N.E.2d 853, 859 (Ind.1998), *reh'g denied.*[5]

■ Because Weis failed to lodge an objection during the prosecutor's argument, his claim of prosecutorial misconduct is procedurally foreclosed and reversal on appeal requires a showing of fundamental

---

**5.** The second part of this analysis has also been termed "grave peril." *Cox,* 696 N.E.2d at 859 n. 6. However, as Justice Boehm noted in *Cox,* "grave peril" exists for every defendant charged with a felony.

error. *Zenthofer v. State*, 613 N.E.2d 31, 34 (Ind.1993). "[A]n appellate claim of prosecutorial misconduct presented on appeal in the absence of contemporaneous trial objection will not succeed unless the defendant establishes not only the grounds for prosecutorial misconduct but also the additional grounds for fundamental error." *Booher v. State*, 773 N.E.2d 814, 817 (Ind. 2002).

■ Weis argues that the prosecutor improperly and repeatedly referred to Weis as a "couch potato" in the State's closing argument, and repeatedly informed the jury that it could convict Weis solely on the basis of J.S.'s testimony. We separately address each argument.

During cross-examination, Weis testified that "I was—for a lack of a better word, I was a couch potato." Appellant's App. at 592. Later, Weis stated, "I was more of a couch potato on my days off than going and helping out with the kids." *Id.* at 594.

■ In judging the propriety of a prosecutor's remarks, we consider statements in the context of the argument as a whole. *Hollowell v. State*, 707 N.E.2d 1014, 1024 (Ind.Ct.App.1999). It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based on his analysis of the evidence. *Id.* We do not find that the prosecutor's reference to Weis using Weis's own words was error, much less fundamentally so. Accordingly, Weis has failed to demonstrate any error with respect to the "couch potato" reference.

■ Weis also contends that the prosecutor improperly informed the jury that it could convict Weis on the sole basis of J.S.'s testimony. Weis argues that *Ludy v. State*, 784 N.E.2d 459 (Ind.2003) requires reversal of Weis's convictions. We disagree.

In *Ludy*, our supreme court determined that the following jury instruction was improper: "A conviction may be based solely on the uncorroborated testimony of the alleged victim if such testimony establishes each element of any crime charged beyond a reasonable doubt." *Id.* at 460. The Court found the instruction improper for three reasons: (1) it unfairly focuses the jury's attention on one part of the evidence; (2) it presents an irrelevant appellate concept to the jury's function as factfinder; and (3) the term "uncorroborated" may mislead or confuse a jury. *Id.* at 461.

Here, Weis concedes that the trial court properly instructed the jury. However, Weis points to the prosecutor's repeated questions to the jury during voir dire concerning the testimony of the alleged victim, and his comments during closing argument, that the jury "can convict Michael Weis based on [J.S.'s] testimony." Appellant's App. at 642–43. Weis contends that the prosecutor's statements "left the jury with precisely the same impact as would a jury instruction." Appellant's Br. at 22.

The mere fact that a jury may not be instructed on a certain point of law does not lead to the conclusion that argument concerning that point of law is also improper. *Cf. Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001) ("[a]lthough evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence.") Here, the essence of the case involved the credibility of two witnesses: Weis, who denied sexually abusing J.S., and J.S., who implicated Weis as her abuser. We view the State's argument that the jury could convict if it believed J.S.'s testimony as an appropriate characterization of the evidence. *See Hol-*

*lowell,* 707 N.E.2d at 1024. Accordingly, we find no error.

### IV. Sufficiency of the Evidence

#### A. Standard of Review

When we review a claim that a conviction is not supported by sufficient evidence establishing the defendant's guilt, we may not reweigh the evidence or question the credibility of witnesses. *Doty v. State,* 730 N.E.2d 175, 180 (Ind.Ct.App. 2000). We must affirm a conviction if the finder-of-fact heard evidence of probative value from which it could have inferred the defendant's guilt beyond a reasonable doubt. *Graham v. State,* 713 N.E.2d 309, 311 (Ind.Ct.App.1999), *trans. denied.* When making this determination, we consider only the evidence, and all reasonable inferences to be drawn from that evidence, favorable to the judgment. *O'Neal v. State,* 716 N.E.2d 82, 89 (Ind.Ct.App.1999), *trans. denied.*

#### B. Analysis

To sustain a conviction for child molesting as a Class A felony, the State is required to show that: (1) Weis, being over twenty-one years old; (2) with a child under fourteen (14) years of age; (3) performed or submitted to sexual intercourse or deviate sexual conduct. Ind.Code § 35–42–4–3.

Here, J.S. testified that Weis sexually abused her "pretty much every day after school" or "about five (5) nights a week because my mom was home the other two...." Appellant's App. at 387, 410. Weis would abuse J.S. three ways: "[h]e stuck them in my throat, then he stuck them in my behind ... and then sometimes he would stick it in my privates." Appellant's App. at 405. The abuse began "since I was three [years old]." *Id.* at 411. The last time J.S. was abused was the day before she went into foster care. J.S.

never told anyone until she was in foster care because "[Weis] told me that if I didn't—that if I did tell that I would be sent somewhere where I couldn't see him or mom for a long time, a long, long time." *Id.* at 408.

Weis argues that the evidence was insufficient to support his convictions for child molesting. He contends that J.S.'s testimony was incredibly dubious, and hence, could not serve as the basis for his convictions. Under the incredible dubiosity rule, a court may "impinge on the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity." *Murray v. State,* 761 N.E.2d 406, 408 (Ind. 2002). The application of this rule is limited to where "the sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Id.* (*quoting Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994)).

Upon reviewing J.S.'s testimony, we do not find it to be equivocal, or inherently contradictory or improbable. It is up to the trier of fact to weigh the credibility of a witness's testimony. Weis was able to cross-examine J.S. in an attempt to uncover inconsistencies and biases in her story, and the jury was able to independently evaluate J.S.'s testimony. We view Weis's argument as an invitation for us to reweigh the credibility of the witnesses, which we shall not do. Weis has not demonstrated that the incredible dubiosity rule is applicable here. Accordingly, the State presented sufficient evidence to support Weis's convictions.

### V. Sentencing

Finally, Weis asserts that his enhanced sentence violates his Sixth Amendment

rights as set forth in *Blakely v. Washington.*[6] Weis contends that because he has no criminal history, the trial court improperly enhanced his sentence by finding two aggravators: a breach of a position of trust and the effect the crimes will have on the victim.[7]

The determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State,* 722 N.E.2d 799, 801 (Ind.2000). In *Blakely,* however, the United States Supreme Court held that the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase the sentence for a crime above the presumptive sentence assigned by the legislature. *Strong v. State,* 817 N.E.2d 256, 260 (Ind.Ct.App.2004) (citing *Blakely,* 124 S.Ct. at 2537), *clarified on reh'g,* 820 N.E.2d 688 (2005), *trans. denied.* Specifically, in *Blakely,* the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Court defined the "statutory maximum" as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by*

*the defendant.*" *Id.* at 2537 (emphasis in original). "In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* (emphasis in original). "Indeed, inasmuch as Indiana's present sentencing procedure allows a trial court, without the aid of a jury, to enhance a sentence where certain factors are present, it violates a defendant's Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence, pursuant to *Blakely.*" *Strong,* 817 N.E.2d at 262.

Initially, the State asserts that Indiana's sentencing scheme is not implicated by *Blakely* and therefore does not affect Weis's sentence. Based upon recent precedent by our supreme court, *Blakely* does apply to Indiana's sentencing scheme. *Smylie v. State,* 823 N.E.2d 679, 684–85 (2005); *see also Strong,* 817 N.E.2d at 261–62.

Turning to Weis's argument, we note that a defendants Sixth Amendment rights are not implicated where a defendant consents to judicial fact-finding or stipulates to the relevant facts. *Blakely,* 124 S.Ct. at 2541. Similarly, if a defendant admits to the relevant facts necessary to find an aggravating factor, *Blakely* is not implicated. *Id.* at 2537; *see also Teeters v. State,* 817 N.E.2d 275, 279 (Ind.Ct. App.2004), *trans. denied.*

---

**6.** On January 12, 2005, the United States Supreme Court decided *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), wherein it invalidated the mandatory application of the Federal Sentencing Guidelines on the basis of the Sixth Amendment. In *Booker,* the Court reaffirmed its holdings in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and, later, in *Blakely* that: "Any fact (other than a prior conviction) which is necessary to sup-

port a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 125 S.Ct. at 756.

**7.** The presumptive sentence for a Class A felony is 30 years, and may not be enhanced by more than 20 years. Ind.Code § 35–50–2–4.

Here, Weis testified at trial, and identified J.S. as his stepdaughter. Further, the State and Weis engaged in the following colloquy:

> Weis:I consider her as my biological daughter, even though I did not conceive her. I was there from day one when she was born.
>
> State:You were the only dad she ever knew?
>
> Weis:Right.

Appellant's App. at 588. This testimony is sufficient to constitute an admission that Weis held a position of trust with J.S. *See Hampton v. State,* 719 N.E.2d 803, 808 (Ind.1999) (finding position of trust to be a proper aggravator under Ind.Code § 35–38–1–7.1). The finding of a single aggravating factor is sufficient to support an enhanced sentence. *Lewis v. State,* 759 N.E.2d 1077, 1087 (Ind.Ct.App.2001), *trans. denied.* As such, the trial court did not err in enhancing Weis's sentence on that basis.[8]

Moreover, even if we found that the trial court improperly engaged in judicial fact-finding, an improper denial of a defendant's Sixth Amendment right to have a jury determine all facts legally essential to his or her sentence is subject to a harmless-error analysis. *See Booker,* 125 S.Ct. at 769; *see also Holden v. State,* 815 N.E.2d 1049, 1060 (Ind.Ct.App.2004), *trans. denied.* A denial of the defendant's Sixth Amendment right constitutes harmless error where the evidence supporting the conviction or enhancement is so convincing that a jury could not have found otherwise. *See Averitte v. State,* 824 N.E.2d 1283, 1288 (2005).

Based upon Weis's own testimony, we believe that no jury could have found that Weis, as J.S.'s stepfather, was not in a position of trust. Accordingly, to the extent that the trial court erred in making this finding itself, any such error is harmless.

### Conclusion

Based upon the foregoing, we find that the trial court did not err in admitting certain evidence, and that Weis has not demonstrated fundamental error. Further, we find that the State did not commit prosecutorial misconduct, and the evidence is sufficient to support the convictions. Finally, the trial court did not err in enhancing Weis's sentence.

Affirmed.

SULLIVAN, J., and MATHIAS, J., concur.

---

8. Because we find that the trial court properly found an aggravating factor based upon Weis's position of trust with the victim, we decline to address whether the trial court erred in finding an aggravating factor based upon the effect of the crimes on the victim.