**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 18 2012, 9:44 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| COREY WEAVER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1111-CR-612 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Anne Flannelly, Master Commissioner
Cause No. 49F09-1007-FD-52391

**June 18, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

Following a jury trial, Appellant-Defendant Corey Weaver appeals following his convictions for two counts of Class A misdemeanor Resisting Law Enforcement.[1] Upon appeal, Weaver claims that his dual convictions are improper and that the trial court abused its discretion in admitting certain evidence. We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

On July 3, 2010, at approximately 10:46 p.m., Indianapolis Metropolitan Police Officer Grady Copeland was dispatched to a residence in the Haughville neighborhood, where there was a report of a man of a particular description in possession of a gun. Officer Copeland was in full police uniform and driving a fully marked police car. Upon arriving, Officer Copeland saw the person described by dispatch, whom he subsequently identified to be Weaver, along with two other individuals. Officer Copeland immediately exited his car and ordered Weaver multiple times to stop and show his hands. Weaver did not comply. Officer Copeland subsequently saw another individual point at Weaver and indicate he had a gun, which caused Officer Copeland to point his gun at Weaver and order him to stop, show his hands, and lower himself to the ground. Weaver, who was on the phone at the time, confirmed that he had a gun, and said it was "right here," reaching toward his shorts pocket with his hand. Tr. p. 63. Weaver claimed that he was on the phone with 911. Officer Copeland repeatedly ordered Weaver to hang up his phone and threatened to shoot him if he reached for his gun.

---

[1] Ind. Code § 35-44-3-3 (2010).

2

Other officers began to arrive, including Indianapolis Metropolitan Police Officer Chad Pryce. Weaver began walking backwards, then stopped and turned to walk away. Officers Copeland and Pryce approached Weaver and grabbed his arms in an attempt to take him to the ground. Officer Copeland grabbed Weaver's left arm and Officer Pryce, who was holding a taser, grabbed Weaver's right arm. Weaver tensed up and tried to pull himself out from Officer Copeland's grasp, pulling Officer Copeland into his body. After further efforts, and with the assistance of another officer, Officers Copeland and Pryce succeeded in placing Weaver on the ground, at which point Weaver put his left hand underneath his body and refused to present it for handcuffing. Officer Copeland repeatedly told Weaver to place his hand behind his back and succeeded in forcing Weaver's hands into handcuffs with help from other officers. At that point, Officer Copeland recovered the gun from Weaver's front pocket and arrested Weaver.[2]

On July 6, 2010, the State charged Weaver with Class D felony criminal recklessness (Count 1), Class D felony pointing a firearm (Count 2), and two counts of Class A misdemeanor resisting law enforcement (Counts 3 and 4). Count 3 alleged that Weaver resisted Officer Pryce; Count 4 alleged that Weaver resisted Officer Copeland. On October 19, 2011, the State moved to dismiss Counts 1 and 2 and to rename Counts 3 and 4 as amended Counts 1 and 2. The trial court granted the motions.

At trial, defense counsel sought to introduce the recording of Weaver's 911 call in order to show Weaver's state of mind. The trial court excluded this evidence. Following trial, the jury found Weaver guilty of amended Counts 1 and 2. The trial

---

[2] Weaver introduced his gun permit as an exhibit at trial.

court sentenced Weaver to concurrent sentences of 365 days in the Marion County Jail, with 351 suspended, 180 to probation on each. This appeal follows.

## DISCUSSION AND DECISION

### I.    Dual Convictions

Upon appeal, Weaver challenges his convictions for both Counts I and II. Weaver points to *Armistead v. State*, 549 N.E.2d 400, 401 (Ind. Ct. App. 1990), in which this court observed that a defendant cannot be held liable for more than one count of resisting law enforcement, regardless of the number of officers involved, if the charges stem from a single event. As the *Armistead* court observed, the offense of resisting law enforcement is a crime against public administration, specifically the State of Indiana and law enforcement authority, rather than any particular person. *Id.* (interpreting Ind. Code § 35-44-3-3). "It is the act of resisting duly constituted authority which the statute prohibits, not resisting individual representatives of that authority." *Id.*

In *Armistead*, the defendant, who had approached officers who were questioning his brother, backed away from an officer, yelled obscenities at him, and assumed a pugilistic stance. *Id.* When the officer indicated he needed to talk to the defendant, he remained confrontational and appeared prepared to flee. *Id.* A second officer told the defendant that he would be arrested if he did not calm down, causing the defendant to back into a chain link fence and continue to yell. *Id.* This second officer told the defendant he was under arrest and ordered him to turn around, which the defendant would not do, so the second officer tried to turn him around. *Id.* At this point the defendant hit a third officer in the nose, causing a struggle in which all three officers

4

were injured. *Id.* The defendant was convicted of Class D felony resisting law enforcement with respect to the third officer and Class A misdemeanor resisting law enforcement with respect to the first and second officers. *Id.* This court reversed, concluding that the defendant had received three convictions based upon a "single affray with the police." *Id.* at 402.

The rule in *Armistead* has been frequently cited. In *Vest v. State*, 930 N.E.2d 1221, 1227 (Ind. Ct. App. 2010), *reh'g denied, trans. denied*, this court observed, "[T]he general rule is that in a single, continuous episode of resisting law enforcement, 'only one offense is committed regardless of the number of officers involved'" (quoting *Touchstone v. State*, 618 N.E.2d 48, 49 (Ind. Ct. App. 1993)). As the *Vest* court acknowledged, there are exceptions to this rule, specifically when (1) the defendant commits more than one of the acts enumerated under section 35-44-3-3, or (2) when more than one officer sustains physical injury. *Id.* (citing *Williams v. State*, 755 N.E.2d 1183, 1186 (Ind. Ct. App. 2001) (multiple enumerated acts) and *Whaley v. State*, 843 N.E.2d 1, 14-15 (Ind. Ct. App. 2006) (multiple physical injuries)).

Weaver argues that, like in *Armistead*, he similarly had a "single affray" with the police. The State responds by arguing that Weaver's acts of pulling away from Officer Copeland and refusing to present his hand for handcuffing after he was on the ground constitute separate incidents. According to the State, these incidents were separated by the officers' acts of wrestling Weaver to the ground. Had any significant span of time or distance occurred between Weaver's pulling away and his active refusal to present his hands for cuffing, the State's argument might be more persuasive. But there was no

interruption in Weaver's confrontation with the police. The confrontation was confined to a single location, and it was short, lasting two minutes at most from the time Officer Copeland arrived on the scene (Tr. 80) and one minute, at most, from the time Officer Pryce arrived. (Tr. 110) Given the lack of any apparent interruption in the confrontation, together with the short time frame and confined space in which it occurred, we must conclude that a single incident occurred such that only one conviction may be sustained.

Significantly, there is no allegation that Weaver committed separate enumerated acts under the statute or that the officers were separately injured. It is further telling that the only stated basis for the State's separate charges was the involvement of two separate officers, which the State concedes does not serve as a valid basis for multiple convictions. State's Br. p. 8. ("[T]he number of police officers involved in a resisting incident is irrelevant."). Based upon *Armistead* and its progeny, we must conclude that Weaver was erroneously convicted of two separate counts of resisting law enforcement. *See Touchstone*, 618 N.E.2d at 49 (permitting single conviction where defendant forcibly resisted one officer, requiring three officers to subdue and transport him to police station). Accordingly, we reverse and remand with instructions to vacate one of those convictions and its accompanying sentence.

## II.    Evidence

Weaver additionally challenges the exclusion from evidence of a tape recording of his phone call to 911. Weaver's call to 911 lasted only until he hung up his phone as

directed by police. According to Weaver, this tape recording was relevant to show his state of mind at the time of the resisting law enforcement incident.

The admission of evidence is left to the sound discretion of the trial court, and this court will not reverse that decision absent an abuse of discretion. *Weis v. State*, 825 N.E.2d 896, 900 (Ind. Ct. App. 2005). An abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

In excluding the 911 call from evidence, the trial court found that it was incomplete and inaccurate. Apparently, Weaver's was not the only call to 911. Another longer call depicted a more extensive interaction between Weaver and the police. But this longer call contained other prejudicial statements, and the State sought only to admit it in the event that Weaver's call was admitted.

The trial court was within its discretion to exclude Weaver's 911 call. Significantly, the call was not demonstrably probative of his state of mind; it terminated before Weaver committed the charged acts of resisting law enforcement. In addition, the call, coming from Weaver's phone, was from Weaver's perspective only, with the police involvement merely background noise. In excluding Weaver's call, the trial court considered the longer 911 call detailing more extensive interaction between Weaver and the police. Given the court's evaluation of both recordings, it was entitled to conclude that Weaver's call was not a full portrayal of the circumstances and might unfairly prejudice the State's case. We find no abuse of discretion. *See* Ind. Evid. R. 403

7

(permitting trial court to exclude evidence which is substantially more prejudicial than probative).

Further, any error in the exclusion of the recording is harmless. The recording tends to show Weaver's calm demeanor while speaking to the 911 operator and in the initial moments after Officer Copeland's arrival on the scene. While Weaver claims it shows his state of mind as it relates to his resisting law enforcement, the actual acts of resistance do not occur during the duration of the recording. To the extent the recording establishes Weaver's state of mind prior to the resisting acts, it says nothing about his state of mind at the time he resisted. Weaver's substantial rights were not affected by the exclusion of his 911 call. *See Fleener v. State*, 656 N.E.2d 1140, 1141 (Ind. 1995) ("Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.").

The judgment of the trial court is affirmed in part, reversed in part, and remanded.

VAIDIK, J., and CRONE, J., concur.