## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 24 2017, 6:16 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hirman E. Jackson, *Appellant-Defendant,* | August 24, 2017 |
| v. | Court of Appeals Case No. 79A04-1612-CR-2936 |
| | Appeal from the Tippecanoe Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Thomas H. Busch, Judge |
| | Trial Court Cause No. 79C01-1603-F1-4 |

**Najam, Judge.**

# Statement of the Case

Hirman Jackson appeals his convictions[1] for five counts of attempted murder, as Level 1 felonies (Counts I-V); two counts of aggravated battery, as Level 3 felonies (Counts VI and VII); two counts of battery with a deadly weapon, as Level 5 felonies (Counts VIII and IX); two counts of battery resulting in serious bodily injury, as Level 5 felonies (Counts X and XI); one count of criminal recklessness, as a Level 5 felony (Count XII); one count of pointing a firearm, as a Level 6 felony (Count XIII); one count of unlawful possession of a firearm by a serious violent felon, as a Level 4 felony (Count XIV); a sentencing enhancement based on the unlawful use of a firearm in the commission of a felony (Count XV); and a habitual offender sentencing enhancement (Count XVI). He raises two issues for our review, which we restate as follows:

1. Whether the court committed fundamental error when it instructed the jury on transferred intent.

2. Whether the court committed fundamental error when it permitted the State to inform the jury as to how the evidence demonstrated Jackson's intent to commit the crimes alleged.

We affirm.

---

[1] This was a bifurcated trial. The jury convicted Jackson of Counts I through XIII during the first phase of the trial. Jackson waived his right to a jury trial for the second phase, and, after a bench trial, the trial court convicted him of Counts XIV and XVI. The court dismissed Count XV, unlawful use of a firearm, during phase two of the trial.

## Facts and Procedural History

On February 12, 2016, Shantaya Kirk, along with three other adults and one young child, drove from Chicago, Illinois, to Lafayette, Indiana, to return $500 she had borrowed from Jackson. Kirk and the others met Jackson at his residence. Kirk spoke with Jackson inside his apartment, but she then returned to the car where the others waited. Jackson also went out to the vehicle and stood next to the passenger door.

After a few moments, Jackson fired a gun into the vehicle several times. Kirk instructed the driver to drive away from Jackson. Jackson continued firing at the vehicle until all of the bullets had been fired.[2] Jackson shot Kirk once in the shoulder and once in the forearm. Kirk sustained a broken wrist and continues to have pain and numbness in her left shoulder. Jackson shot Steven Allen, one of the other adult passengers in the vehicle, in the head. Allen had a seizure as a result of the gunshot wound. A surgeon removed the bullet and part of Allen's skull to allow the swelling in his brain to lessen. Allen continues to have seizures, he has problems with his left arm and leg, and he has behavioral and emotional issues as a result of the damage to his brain. The other occupants of the vehicles were uninjured.

---

[2] During the trial, Jackson admitted to firing the gun multiple times; however, he argued that he had acted in self-defense.

The State charged Jackson with five counts of attempted murder, two counts of aggravated battery, two counts of battery with a deadly weapon, two counts of battery resulting in serious bodily injury, one count of shooting a firearm, one count of pointing a gun, and one count of unlawful possession, all as felonies. The State also charged Jackson with a sentencing enhancement based on the unlawful use of a firearm in the commission of a felony and a habitual offender sentencing enhancement.

At the close of Jackson's ensuing jury trial, the court instructed the jury as follows, without objection:

> The crime of attempted murder is defined as follows: A person attempts to commit a murder when, acting with the specific intent to kill another person, he engages in conduct that constitutes a substantial step toward killing that person.

> <u>Count I</u>

> Before you may convict the Defendant of attempted murder as charged in Count I, the State must have proved each of the following elements beyond a reasonable doubt:

> 1. The Defendant

> 2. acting with the specific intent to kill Shantaya Kirk

> 3. did fire a deadly weapon at said Shantaya Kirk

> 4. which was conduct constituting a substantial step toward the commission of the intended crime of killing Shantaya Kirk; and

5. did not act in self-defense.

> If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of the crime of attempted murder, a felony, charged in Count I.

[7] Appellant's App. Vol. II at 81. The State's charges with respect to the other victims of attempted murder read the same, except for the different names. The court also gave the jury the following instruction, again without objection: "Under the doctrine of transferred intent, the intent to harm one person may be treated as the intent to harm a different person when, through mistake or inadvertence, violence directed towards one person results in the injury to a different person." Appellant's App. Vol. II at 93.

[8] The State had also provided State's Proposed Instruction 1, which read as follows: "Intent to kill may be inferred from the use of a deadly weapon in a manner likely to cause death or great bodily injury, in addition to the nature of the attack, and the circumstances surrounding the crime." Appellant's App. Vol. II at 58. The trial court rejected the proposed instruction but gave the State permission to argue the underlying point in its closing arguments. The State then made the following statements during its closing argument, without objection:

> We know that [Jackson] shot [Kirk]. Acting with the specific intent to kill. Again we can't figure out exactly what a person is thinking but we look at the totality of the circumstances. Intent to kill may be interpreted from the use of a deadly weapon in a manner likely to cause death or great bodily injury in addition to

the nature of the attack and the circumstances surrounding a crime. This is the state of case law in the state of Indiana. This is how we can look at intent to kill in this case. It can be inferred from the use of a deadly weapon [in] a manner likely to cause death or great bodily harm along with the nature of the totality of the circumstances, the circumstances surrounding it.

Tr. Vol. IV at 205-06. The jury found Jackson guilty on Counts I through XIII. After a bench trial on the remaining charges, the trial court found Jackson guilty on Counts XIV and XVI. The court then sentenced him to ninety-two years in the Department of Correction.[3] This appeal ensued.

# Discussion and Decision

## Issue One: Transferred Intent Jury Instruction

[9] Jackson asserts that the trial court committed fundamental error when it instructed the jury on transferred intent. As the Indiana Supreme Court has explained:

> Appellate courts may, on rare occasions, resort to the fundamental error exception to address on direct appeal an otherwise procedurally defaulted claim. However, fundamental error is extremely narrow and available only when the record reveals a clearly blatant violation of basic and elementary principles, when the harm or potential for harm cannot be

---

[3] The court entered judgement on Counts I through V, XIV, and XVI. The court sentenced Jackson based on Counts I, II, XIV, and XVI. The court concluded that Counts III, IV, and V merged into Counts I and II for purposes of sentencing. The Court declined to enter judgment on the remaining guilty verdicts.

denied, and when the violation is so prejudicial to the rights of the defendant as to make a fair trial impossible.

*Shoun v. State*, 67 N.E.3d 635, 640 (Ind. 2017) (citations omitted). With respect to jury instructions, we usually consider: "(1) whether the tendered instruction correctly states the law; (2) whether there was evidence presented at trial to support giving the instruction; and (3) whether the substance of the instruction was covered by other instructions that were given." *McCowan v. State*, 27 N.E.3d 760, 763-64 (Ind. 2015) (citations omitted). We consider the instructions as a whole and do not reverse unless the whole of the instructions misled the jury as to the law in the case. *Id.* at 764.

[10] It is well-established that the specific intent to kill is a necessary element of attempted murder. A jury instruction

> which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

*Spradlin v. State*, 569 N.E 2d 948, 950 (Ind. 1991).

[11] Here, again, the trial court instructed the jury as follows:

> The crime of attempted murder is defined as follows: A person attempts to commit a murder when, *acting with the specific intent to kill another person*, he engages in conduct that constitutes a substantial step toward killing that person.

<u>Count I</u>

Before you may convict the Defendant of attempted murder as charged in Count I, the State must have proved each of the following elements beyond a reasonable doubt:

1. The Defendant

2. *acting with the specific intent* to kill Shantaya Kirk

3. did fire a deadly weapon at said Shantaya Kirk

4. which was conduct constituting a substantial step toward the commission of the intended crime of killing Shantaya Kirk; and

5. did not act in self-defense.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty of the crime of attempted murder, a felony, charged in Count I.

Appellant's App. Vol. II at 81 (emphasis added). The "specific intent" language was repeated in each of the other four counts in the jury instruction on attempted murder.

[12] The trial court also provided the following instruction on transferred intent to the jury: "[u]nder the doctrine of transferred intent, the intent to harm one person may be treated as the intent to harm a different person when, through mistake or inadvertence, violence directed towards one person results in the injury to a different person." *Id.* at 93.

[13]    The Indiana Supreme Court has permitted the doctrine of transferred intent to be applied to attempted murder charges. In *Blanche v. State*, 690 N.E.2d 709, 711 (Ind. 1998), the defendant was convicted of, among other things, attempted murder. The defendant raised several issues on appeal, including whether the evidence was sufficient to support his convictions and whether the jury was properly instructed on the specific intent requirement for attempted murder. During its discussion on the sufficiency of the evidence, the Indiana Supreme Court held that under the doctrine of transferred intent

> a defendant's intent to kill one person is transferred when, by mistake or inadvertence, the defendant kills a third person; the defendant may be found guilty of the murder of the person who was killed, even though the defendant intended to kill another. *White v. State,* 638 N.E.2d 785, 786 (Ind. 1994). This doctrine also applies to the intent necessary for attempted murder. *Straub v. State,* 567 N.E.2d 87, 90-1 (Ind. 1991) (establishing that state need not introduce evidence that the defendant intended to kill the actual victim, but only that the defendant intended to kill someone).

*Id.* at 712.

[14]    Here, Jackson does not challenge whether the language in the attempted murder instruction properly instructs the jury that a defendant is required to have specific intent to kill in order to be convicted of attempted murder. Rather, he asserts that the trial court committed fundamental error when it also provided the transferred intent instruction to the jury because it "blurred the distinction between specific and general intent and rendered the entire pool of

jury instructions confusing and prejudicial." Appellant's Br. at 16. To support his assertion, Jackson relies on *Beasley v. State*, in which the State charged the defendant with attempted murder, and the trial court gave the following jury instruction:

TO CONVICT THE DEFENDANT OF ATTEMPTED MURDER, THE STATE MUST HAVE PROVED EACH OF THE FOLLOWING ELEMENTS:

THE DEFENDANT LARRY E. BEASLEY

(1) KNOWINGLY OR INTENTIONALLY.

(2) ENGAGED IN CONDUCT BY KNOWINGLY STRIKING WITH A DEADLY WEAPON, A KNIFE, THE PERSON OF BEVERLY PRESTON, RESULTING IN SERIOUS BODILY INJURY.

(3) WHICH CONDUCT CONSTITUTES A SUBSTANTIAL STEP TOWARD THE *KNOWING OR INTENTIONAL* KILLING OF ANOTHER HUMAN BEING.

IF THE STATE FAILED TO PROVE EACH OF THE ELEMENTS BEYOND A REASONABLE DOUBT, THE DEFENDANT SHOULD BE FOUND NOT GUILTY.

IF THE STATE DID PROVE EACH OF THE ELEMENTS BEYOND A REASONABLE DOUBT, THEN YOU SHOULD FIND THE DEFENDANT GUILTY OF ATTEMPTED MURDER, A CLASS A FELONY.

643 N.E.2d 346, 347 (Ind. 1994). On appeal, the Indiana Supreme Court held that the jury instruction constituted fundamental error because the jury could convict the defendant of attempted murder if he only acted knowingly. The court held that, "although we usually evaluate jury instructions as a whole, where the trial court lists the elements of attempted murder and includes an incorrect *mens rea*, this error cannot be cured by another instruction." *Id.* at 348.

[15] The present case is distinguishable from *Beasley*. The court in *Beasley* made it clear that the error could not be cured by another instruction when the elements of attempted murder included an incorrect *mens rea*. Here, however, the court properly instructed the jury on the elements of attempted murder, and the instructions make it clear to the jury that specific intent to kill is a necessary requirement for the offense of attempted murder. This transferred intent instruction did not introduce a new level of intent but, instead, referenced the intent required for the underlying offense.

[16] When considered as a whole, the instructions did not mislead the jury. *See McCowan*, 27 N.E.3d at 764. Accordingly, we cannot say that the trial court committed fundamental error when it instructed the jury.

### Issue Two: The State's Closing Argument

[17] Jackson also asserts that the court erred by permitting the State to include the language from the State's Proposed Jury Instruction 1, which the court refused to read to the jury, in the State's closing argument to the jury. But as an initial

matter we note that Jackson did not object during the State's closing argument. Further, he does not argue on appeal that the alleged error was fundamental error. As such, we conclude that Jackson has not preserved this issue for appellate review. *See* Ind. Appellate Rule 46(A)(8)(a).

[18] Jackson's waiver notwithstanding, no error occurred on this issue. The trial court rejected the proposed instruction but gave the State permission to argue the point in its closing argument. The State then argued as follows:

> We know that [Jackson] shot [Kirk]. Acting with the specific intent to kill. Again we can't figure out exactly what a person is thinking but we look at the totality of the circumstances. Intent to kill may be interpreted from the use of a deadly weapon in a manner likely to cause death or great bodily injury in addition to the nature of the attack and the circumstances surrounding a crime. This is the state of case law in the state of Indiana. This is how we can look at intent to kill in this case. It can be inferred from the use of a deadly weapon a manner likely to cause death or great bodily harm along with the nature of the totality of the circumstances, the circumstances surrounding it.

Tr. Vol. IV at 205-06.

[19] As we have explained:

> [i]t is well settled that the proper scope of final argument is within the trial court's sound discretion. *Taylor v. State,* 457 N.E.2d 594, 599 (Ind. Ct. App. 1983). On appeal, we will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Id.* In seeking reversal of a conviction, however, it is incumbent upon the appellant to establish that the trial court's

abuse of discretion was "clearly prejudicial" to his rights. *See id*.; *Rouster v. State,* 600 N.E.2d 1342, 1347 (Ind. 1992).

*Nelson v. State*, 792 N.E.2d 588, 591-92 (Ind. Ct. App. 2003), *trans denied*.

[20] In support of his argument, Jackson cites *Dill v. State*, where our Supreme Court held that "instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved." 741 N.E.2d 1230, 1232 (Ind. 2001). However, again, the issue in the instant appeal is not whether the trial court provided an improper instruction to the jury but whether the court properly allowed the State to inform the jury of the State's evidentiary basis for Jackson's intent. "[T]he mere fact that a jury may not be instructed on a certain point of law does not lead to the conclusion that argument concerning that point of law is also improper." *Weis v. State*, 825 N.E.2d 896, 904 (Ind. Ct. App. 2005). The State's comments during closing argument were not improper or misleading. Accordingly, we cannot say that the trial court erred when it allowed the State to make those statements during its closing argument, and we affirm Jackson's convictions.

[21] Affirmed.

Kirsch, J., and Brown, J., concur.