## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 23 2018, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael R. Auger
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tyler Wade Buskirk, | October 23, 2018 |
| *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-350 |
| v. | Appeal from the Johnson Circuit Court |
| State of Indiana, | The Honorable K. Mark Loyd, Judge |
| *Appellee-Plaintiff.* | Trial Court Cause No. 41C01-1704-F3-22 |

**Riley, Judge.**

# STATEMENT OF THE CASE

[1] Appellant-Defendant, Tyler Buskirk (Buskirk), appeals his conviction for child molesting, a Level 3 felony, Ind. Code § 35-42-4-3(a).

[2] We affirm.

# ISSUE

[3] Buskirk raises one issue on appeal, which we restate as: Whether the trial court erred in admitting the child victim's prior out-of-court statement after the victim had already testified at trial.

# FACTS AND PROCEDURAL HISTORY

[4] Nineteen-year-old Buskirk moved into his Grandmother's home in Franklin, Indiana, early in the summer of 2016 because he had been kicked out of his father's home and had nowhere else to go. Also living in Grandmother's home were Mother and her eight-year-old daughter, J.M. By June 21, 2016, Buskirk had been living there for approximately one month.

[5] On June 21, 2016, Mother went to work in the evening and left J.M. in Grandmother's care. Later that evening, Grandmother retired to her bedroom, as was her custom. Buskirk and J.M. sat on the couch in the living room together. J.M. and Buskirk went into Mother's bedroom. Grandmother eventually realized that it was after 11:00 p.m. and time for J.M. to be in bed, so she went through the home looking for her. The lights were off in the home, so Grandmother called out for J.M. and Buskirk. J.M. came running out of

Mother's bedroom. Grandmother observed that J.M. had her underpants hidden in her hands behind her back and that the child was not clothed apart from a long shirt. Buskirk followed J.M. out of the bedroom. Grandmother was suspicious and asked Buskirk if he had done anything to J.M., which Buskirk denied.

[6] Grandmother's suspicions were not allayed. When Mother returned from work the next morning, Grandmother indicated to her that they needed to talk after Mother rested. That afternoon Grandmother and Mother retrieved J.M. from the Girls Club where she had spent the day. They went to a local restaurant, where J.M. disclosed to them that Buskirk had touched her inappropriately. Grandmother alerted the authorities and was directed to bring the child to the Franklin Police Department. There, Detective Matt Harris (Detective Harris) advised that J.M. should be taken to Riley Hospital, where J.M. underwent a sexual assault examination. On June 23, 2016, J.M. was interviewed by Detective Harris and reported that Buskirk had directed her to rub his penis, had attempted to place his penis in her vagina, and had directed her to place his penis in her mouth. (State's Exhibit 22B).[1] As part of the investigation, physical evidence was collected and sent to the Indiana State Police Laboratory for testing, including the sheets from Mother's bed, a used condom from the trashcan in Mother's bedroom, several toothbrushes, J.M.'s sexual assault kit,

---

[1] The DVD recording of the June 23, 2016, interview was admitted into evidence as State's Exhibit 22, but the DVD was not transmitted as part of the record on appeal. A transcript of the interview was admitted as State's Exhibit 22B.

and a buccal swab from Buskirk. Due to laboratory protocols for submitting items, it took approximately ten months for the tests to be completed.

[7] On April 4, 2017, the State charged Buskirk with child molesting as a Level 3 felony. On May 16, 2017, the State filed a notice of discovery compliance in which it disclosed its intention to introduce J.M.'s statement at trial. On November 14 through 17, 2017, Buskirk's jury trial took place. Buskirk's counsel developed a theory that Grandmother had coached J.M. into making the allegations in order to exact revenge on Buskirk's father, with whom Grandmother had a contentious relationship. J.M. testified that Buskirk had made her rub his penis with her hand, attempted to place his penis in her vagina, and directed her to lick his penis. As part of his cross-examination of J.M., Buskirk's counsel questioned J.M. about how many times she had spoken to the prosecutor about the allegations. Defense counsel also posed the following questions:

> Counsel: You don't remember? Okay. Does [the prosecutor] have a dog?
>
> J.M.: Yes.
>
> Counsel: Okay. What's the dog's name?
>
> J.M.: Nook.
>
> Counsel: What's his name?
>
> J.M.: Nook.
>
> Counsel: Okay. You ever play with that dog?
>
> J.M.: Sometimes.

Counsel: Sometimes? Okay. How many times have you played with that dog?

J.M.: Only a few.

Counsel: How many?

J.M.: Only a few.

Counsel: Two?

J.M.: I only played with him, like, a few times.

Counsel: A few times, okay. Did you see the dog each time you told [the prosecutor] what happened?

J.M.: Yes.

(Transcript Vol. V, pp. 9-10). At the close of J.M.'s testimony, the State sought to have her June 23, 2016, forensic interview admitted into evidence. Buskirk's counsel objected on the basis that the interview was not under oath and that it contained information that would be inappropriate or inadmissible unless severely redacted. The prosecutor responded that Buskirk's counsel had repeatedly asked J.M. how many times she had spoken to Grandmother about the allegations and how many times she had spoken to the prosecutor in preparation for trial. The prosecutor argued, "He's brought up our facility dog, indicating or insinuating that the facility dog is the means for us to get her to say what we want her to say." (Tr. Vol. V, p. 20). The trial court indicated that the interview would be redacted and that defense counsel's objection would be overruled, "if that's the only thing you got." (Tr. Vol. V, p. 20). Buskirk's counsel participated in the redaction of the interview and lodged no further

objection to its admission. Defense counsel answered "No" when asked by the trial court if he had any objection to the publication of the admitted portions of the forensic interview. (Tr. Vol. V, p. 34). The jury found Buskirk guilty. On December 19, 2017, the trial court sentenced Buskirk to serve nine years with the Indiana Department of Correction, with two years suspended to probation.

[8] Buskirk now appeals. Additional facts will be added as necessary.

# DISCUSSION AND DECISION

[9] Buskirk contends that the trial court erred when it admitted J.M.'s forensic interview into evidence because its admission was not in accordance with Indiana Code section 35-37-4-6(e), commonly referred to as the Protected Person Statute. Generally, we review a trial court's decision regarding the admission of evidence at trial for an abuse of the trial court's discretion. *Fansler v. State*, 100 N.E.3d 250, 253 (Ind. 2018). However, such decisions are not subject to review unless a contemporaneous objection was made at trial. *Jackson v. State*, 735 N.E.2d 1146, 1152 (Ind. 2000). In addition, any issues raised for the first time on appeal are waived. *See Weis v. State*, 825 N.E.2d 896, 902 (Ind. Ct. App. 2005) (holding that Weis' failure to object at trial on the basis of the Protected Person Statute resulted in the waiver of his claims that the victim's statements were improperly admitted). Here, Buskirk's counsel made some preliminary objections to the admission of the forensic interview, but none of those objections pertained to the Protected Person Statute. In addition,

Buskirk's counsel did not object to the forensic interview when it was admitted at trial or when it was published to the jury. As such, his claim is waived.

[10] Perhaps in an attempt to circumvent the effect of his waiver, Buskirk contends that "the trial court was going to admit the videotaped statement no matter what the defense counsel argued." (Appellant's Br. p. 20). Our review of the record does not support such a conclusion. Although the trial court set out a plan regarding the redaction of J.M.'s statement and its admission, it did not foreclose the possibility of further objections by Buskirk's counsel. Furthermore, although Buskirk claims that he was prejudiced by the admission of J.M.'s statement, he does not argue that the admission of J.M.'s videotaped statement constituted fundamental error or that it somehow deprived him of a fair trial. We conclude that Buskirk has waived his claim of error pertaining to the admission of J.M.'s videotaped statement.

[11] However, even if Buskirk had preserved his claim or argued that the admission of J.M.'s statement constituted fundamental error, it would not have resulted in the reversal of his conviction. A claim that has been waived by a defendant's failure to raise a contemporaneous objection may be reviewed on appeal if the reviewing court determines that a fundamental error has occurred. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010), *reh'g denied*. However, the doctrine of fundamental error is narrow and may lead to reversal only where it has rendered a fair trial impossible or where there has been a "'blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process.'" *Id*. The fundamental

error doctrine will, therefore, only be applicable in "'egregious circumstances.'" *Id.* (citation omitted).

[12] The Protected Person Statute provides for the admission of a protected person's out-of-court statement if that statement "is not otherwise admissible in evidence." I.C. § 35-37-4-6(d)(3). Here, it was not necessary for the State to seek admission of J.M.'s statement under the Protected Person Statute and comply with its strictures because the statement was independently admissible on other grounds. Indiana Evidence Rule 801(d)(1)(B) provides that a prior out-of-court statement is admissible as non-hearsay if the witness/declarant testified at trial, was subject to cross-examination, the statement is consistent with the witness' trial testimony, and the statement is offered to rebut an express or implied charge of recent fabrication or recent improper influence. Here, Buskirk's counsel questioned J.M. regarding the number of occasions she had spoken with the prosecutor in preparation for trial and about petting the dog at the prosecutor's office, which implied that the prosecutor used the dog to procure J.M.'s testimony. The State was permitted to rebut that implied charge of recent fabrication or improper influence with J.M.'s prior, consistent statement, and, thus, its admission did not constitute fundamental error.

[13] Even if there had been no independent basis for the admission of J.M.'s statement, we would still find no fundamental error. The State provided Buskirk with notice that they intended to admit the statement at trial, and Buskirk does not claim that he did not have access to the statement prior to trial. Therefore, we cannot find that any lack of awareness of the contents of

J.M.'s statement or the possibility of its introduction at trial deprived Buskirk of a fair trial. In addition, J.M. testified at trial. Her videotaped statement was not the only evidence of the allegations, and it was merely cumulative evidence the admission of which did not amount to fundamental error. *See Weis*, 825 N.E.2d at 903 (finding no fundamental error in the admission of the victim's prior consistent statements absent the hearing required under the Protected Person Statute because the victim testified at trial).

# CONCLUSION

In light of the foregoing, we conclude that Buskirk waived his claim of error based on the admission of J.M.'s prior out-of-court statement, which, regardless of that waiver, did not constitute fundamental error.

Affirmed.

Vaidik, C. J. and Kirsch, J. concur