**Mark P. MURRAY, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 02S00–0007–CR–449.**

Supreme Court of Indiana.

Jan. 24, 2002.

3.  The record shows that after his arrest, Morris gave a statement to police implicating
Banks. R. at 454–56.

John C. Bohdan, Deputy Public Defender, Fort Wayne, IN, Attorney for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

RUCKER, Justice.

A jury found Mark Murray guilty of felony murder, burglary as a Class A felony, and battery as a Class C felony. In this appeal, he challenges the felony murder conviction contending the evidence is not sufficient to support the conviction and that the conviction violates the double jeopardy provision of the Indiana Constitution. We disagree with both contentions and therefore affirm.

### Facts

The facts most favorable to the verdict show that Murray decided to confront Anthony Watson about his verbal abuse of a mutual female friend. In the evening hours of May 17, 1999, accompanied by two associates: Thomas Thompson and David Jackson, Murray proceeded to Watson's house. Thompson drove his van and Jackson brought along an aluminum baseball bat. After arriving at the house, Murray and Jackson exited the van while

Thompson stayed behind. Murray kicked in the front door, and he and Jackson entered. Murray then began yelling at Watson who was apparently asleep on the living room couch and did not respond. What occurred next is a matter of dispute. Jackson testified at trial that while wielding the baseball bat, Murray struck Watson in the head. Murray testified in his own defense, denied handling the bat, and said he did not see anyone strike Watson with it. According to Murray, he merely hit Watson a few times in the head with his fist. In any event, the baseball bat was discarded and later recovered from a dumpster. DNA analysis revealed that a bloodstain found on the bat was consistent with Watson's blood type. An autopsy revealed that Watson died as a result of blunt force injury to the head.

The State charged Murray with murder, felony murder, burglary as a Class A felony, and battery as a Class C felony. A jury acquitted Murray of murder but returned guilty verdicts on the remaining charges. The trial court vacated the burglary and battery convictions and sentenced Murray to sixty years imprisonment for felony murder. This appeal ensued. Additional facts are set forth below where relevant.

### Discussion

### I.

■ Murray challenges the sufficiency of the evidence arguing his conviction is based on the incredibly dubious testimony of one witness: David Jackson. He also contends the State failed to prove that he intended to commit a felony when he entered Watson's home. When reviewing a claim of insufficient evidence, we consider only evidence that supports the verdict and all reasonable inferences drawn therefrom. *Warren v. State,* 725 N.E.2d 828, 834 (Ind.2000). We neither reweigh the evidence nor do we judge the credibility of witnesses. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

### A.

■ Under the incredible dubiosity rule, a court will impinge upon the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind.1994); *Gaddis v. State,* 253 Ind. 73, 251 N.E.2d 658, 661–62 (1969). "Application of this rule is limited to cases, such as *Gaddis,* where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *Tillman,* 642 N.E.2d at 223.

■ In this case, Murray concedes he entered Watson's home by kicking in the door. He also concedes that the aluminum baseball bat introduced into evidence caused Watson's death. However, Murray complains there was no "forensic evidence" to support the contention that he ever handled the bat on the evening of May 17, 1999, and that Jackson's testimony placing the bat in Murray's hand was "purchased," "self-serving," and "conflicting." Br. of Appellant at 14. In support of these latter points, Murray directs our attention to: Jackson's plea agreement given in exchange for his trial testimony; Jackson's pre-trial statement to investigating officers, later recanted, in which Jackson denied responsibility for the presence of the bat; and the testimony of witnesses which Murray contends support his own trial testimony that he never had possession of the baseball bat.

■ Although Jackson's trial testimony was inconsistent in some respects with his pre-trial statement, it was not equivocal, and Jackson did not contradict himself on the witness stand. The fact that a witness gives trial testimony that contradicts earlier pre-trial statements does not necessarily render the trial testimony incredibly dubious. *Davenport v. State*, 689 N.E.2d 1226, 1230 (Ind.1997). As for the alleged corroborating witnesses, at most their testimony was at odds with Jackson's testimony. However, that does mean that Jackson's testimony was incredibly dubious. *See Berry v. State*, 703 N.E.2d 154, 160 (Ind.1998) (declining to apply the incredible dubiosity rule where there were inconsistencies in the testimony among witnesses, but no one witness contradicted himself). Concerning Jackson's plea agreement, Murray thoroughly cross-examined Jackson on its terms and conditions. That Jackson's testimony was different from Murray's testimony was a matter for the jury's determination. "It is for the trier of fact to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve." *Kilpatrick v. State*, 746 N.E.2d 52, 61 (Ind.2001). In sum, Murray has not shown that the incredible dubiosity rule is applicable in this case.

### B.

■ The information charging Murray with felony murder alleged burglary as the underlying felony. In turn, battery as a Class C felony apparently was alleged as the offense underlying the burglary offense.[1] In relevant part, the burglary statute provides: "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary...." I.C. § 35-43-2-1. Murray claims the evidence was not sufficient to sustain the felony murder conviction because the State failed to show that he intended to commit a felony when he broke and entered Watson's house. Rather, according to Murray, the evidence supports the view that he intended only to commit battery as a Class A misdemeanor and not battery as a Class C felony. In support, Murray points to his own testimony that his intent on entering the house was to "fight [Watson]," R. at 431, and other evidence that he says demonstrates that "they were going to have a talking to [Watson]," R. at 253. Regardless of Murray's alleged subjective intent, the record shows that once inside the house, Murray struck a fatal blow to Watson's head with a baseball bat. The jury was not bound to accept Murray's conten-

---

1. In pertinent part the charging information reads:

> On or about the 17th day of May, 1999, in the County of Allen and in the State of Indiana, said defendant, Mark P. Murray, did kill another human being, to wit: Anthony Wayne Watson, while committing or attempting to commit Burglary, to wit: by striking at and/or against the head of Anthony Wayne Watson with a baseball bat, causing him to die, being contrary to the form of the statute in such case made and provided.

R. at 12. The battery statute provides in relevant part: "A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits bat-

tery, a Class B misdemeanor. However, the offense is: ... a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon[.]" Ind.Code § 35-42-2-1(a)(3). Although the charging information here is not a model of clarity, Murray makes no claim that it is defective. Nor does Murray contend that he was misled by the information or that his defense was in any way affected by the wording of the information. *See Wisehart v. State*, 693 N.E.2d 23, 63 (Ind.1998) (rejecting defendant's claim that the charging information was defective despite the fact that the burglary supporting the felony murder count did not allege an intent to commit a specific felony).

tion, and although the fact of breaking and entering is not itself sufficient to prove entry with intent to commit a felony, such intent may be inferred from the defendant's subsequent conduct once inside the premises. *Eveler v. State*, 524 N.E.2d 9, 11 (Ind.1988) (rejecting defendant's claim the evidence was not sufficient to prove that he broke and entered the victim's apartment with the intent to commit the felonies alleged). We conclude the evidence in this case was sufficient to sustain Murray's conviction for felony murder.

## II.

Murray also claims an Indiana double jeopardy violation based on his convictions for burglary and battery. Citing *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), he argues there was a reasonable possibility that the evidentiary facts used by the jury to establish the essential elements for burglary and battery were also used by the jury to establish the essential elements for felony murder. *See id.* at 53. Murray acknowledges that "the trial court was correct in deciding that convictions for all three of the offenses could not be allowed to stand . . . ." Br. of Appellant at 20. However, without cogent argument or citation to authority, Murray asserts the trial court should have vacated the felony murder conviction instead of the battery conviction. Murray is mistaken. Even before *Richardson*, this Court held "when a prosecutor obtains convictions against a defendant for both felony murder and the underlying felony, the defendant may only be sentenced for the greater charge." *Hobson v. State*, 675 N.E.2d 1090, 1094 (Ind. 1996) (citing *Zenthofer v. State*, 613 N.E.2d 31, 35 (Ind.1993)). An appropriate remedy to prevent a double jeopardy violation is to withhold judgment on the lesser-included offense and to sentence the defendant for the greater felony. *See id.* This is essentially the remedy the trial court used here. Murray's claim on this issue fails.

### *Conclusion*

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.