**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**STANLEY L. CAMPBELL**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JERRY COOPER,                          )
                                       )
    Appellant-Defendant,           )
                                       )
        vs.               )    No. 02A03-1309-CR-366
                                       )
STATE OF INDIANA,                      )
                                       )
    Appellee-Plaintiff.            )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable John F. Surbeck, Judge
Cause No. 02D06-1304-FB-69

**February 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Jerry Cooper appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, following a jury trial. Cooper raises a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm Cooper's conviction and remand with instructions that the trial court correct a sentencing error.

**FACTS AND PROCEDURAL HISTORY**

Sometime between 3:00 and 4:00 a.m. on March 29, 2013, Fort Wayne Police Department Officer Nicholas Lichtsinn initiated a traffic stop of a vehicle driven by Shannon Cooper, with Cooper in the front passenger seat and Samantha Buchanan in the backseat behind Cooper. Upon being stopped by the officer, Cooper twice asked Buchanan to take a handgun from his possession, and she refused. Cooper then threw the gun into Buchanan's lap, and she threw the gun under her car seat.

Officer Jason Fuhrman assisted Officer Lichtsinn in the traffic stop and approached the vehicle's passenger side. He noticed that the passenger's side window was down, and he observed a folded dollar bill under the open window. Officer Fuhrman suspected the dollar bill contained narcotics. He picked it up, unfolded it, and observed a white powdery substance. Officer Lichtsinn then observed Cooper chewing on something and a green leafy residue on his shirt. The officers ordered the parties out of the vehicle and ordered Cooper to spit out what was in his mouth, which he did. Officer Douglas Weaver had since arrived at the scene and, with everyone out of the vehicle, he observed the handgun "laying [sic] underneath the seat" in the back. Transcript at 79.

2

On April 4, the State charged Cooper with unlawful possession of a firearm by a serious violent felon, a Class B felony, and with being an habitual offender.[1] On May 23, Buchanan failed to appear at a deposition for which she had been subpoenaed, and the State filed a motion to show cause to have Buchanan explain her failure to appear. Buchanan then appeared at a subsequent deposition, and she testified that she could not recall the events of March 29. The State filed a motion to hold Buchanan in contempt of court, and the court appointed counsel for Buchanan. She then failed to appear at the ensuing hearing and the court issued a warrant for her arrest. Thereafter, she appeared before the court and, on the advice of counsel, she pleaded the Fifth Amendment. The State then offered her immunity for her testimony, and she stated that the handgun found in the vehicle on March 29 belonged to Cooper.

At Cooper's ensuing jury trial, the State called Buchanan to testify. Buchanan testified that, when Officer Lichtsinn initiated the traffic stop, Cooper "panicked and the gun was tossed in my lap." Transcript at 85. She further testified that she then "tossed it underneath the seat." Id. at 86. And when asked about her original deposition testimony, Buchanan explained:

Q     Now, when I [the prosecutor] took your deposition a month or so ago, do you recall telling us then you did not remember what happened that night?

A     Yes.

Q     Do you remember a little bit more today?

---

[1] The State also charged Cooper with possession of marijuana, as a Class A misdemeanor, but the State eventually dismissed that allegation.

A        Yeah.

Q        And why is that?

A        Because my attorney has been talking to me about it.

Q        Okay. And do you remember, is there a reason why you couldn't remember when we took your deposition?

A        No.

Q        Okay. So you honestly didn't remember?

A        I honestly didn't remember.

Id.

On cross-examination, Cooper's attorney attacked Buchanan's credibility. In particular, on cross-examination Buchanan admitted that she thought that she could "could be in trouble" for possession of the firearm, id. at 91; that Shannon was her friend and she thought that Cooper was "creepy," id. at 92; and that, "when you had to explain why the gun was under your seat, you pointed the finger at [Cooper]," id. Regarding Buchanan's prior deposition, Cooper's attorney engaged her in the following colloquy:

Q        You went to the Prosecutors office and you were asked questions . . . correct?

A        Yes.

Q        You didn't remember anything did you.

A        No.

Q        Every time he asked you what happened, you didn't remember, did you.

A        No.

4

Q       I mean, I can ask, I can go over them, but you didn't remember a thing, correct?

A       Yes.

Q       Was that a lie?

A       No.

Q       You're telling us you didn't remember but you wouldn't tell them?

A       I couldn't remember until I went over the paperwork.

* * *

Q       [Y]ou told us today that Jerry Cooper tossed the gun to you, correct?

A       Yes.

Q       And [the prosecutor] asked you the same question in the deposition. Remember that?

A       Yeah.

Q       And you told him you didn't remember. Right?

A       Yes.

Q       Which is the truth? Today or when you said you didn't remember?

A       Today.

* * *

Q       The State offered you immunity that you wouldn't be punished for testifying, correct?

A       Yes.

Q       But you hadn't done anything wrong, right?

A       Yes.

5

Q    So would it be a fair statement that whatever you say today, as long as it's the same as what the State wants to hear, you're not going to get punished for it?

A    Yes.

Q    So it doesn't make any difference whether it's the truth or not the truth.  As long as you give them what they want, you're not going to get in trouble, are you.

A    Yes.

Q    That's true, isn't it?

A    Um-hum (indicating affirmative response).

Q    That's a pretty good deal, isn't it.

A    Yeah.

Q    You can say anything and you get a pass.  Right?

A    Yeah.

Q    Is Shannon Cooper still your friend?

A    Yeah.

* * *

Q    You care about her as a person, as a family friend.

A    Oh yes.

Q    Jerry Cooper, he's still a stranger to you?

A    Yeah.

Q    Still a creep?

A    Yes.

Q    You don't want Shannon getting in any trouble, do you?

6

A      I don't have anything to do with her, we [are] two different people.

Q      Okay. And you don't want to get in trouble, do you?

A      No.

Id. at 95-96, 100-02. And on redirect, Buchanan testified as follows:

Q      On March 29th when the police stopped you, did Shannon Cooper toss the gun in your lap?

A      I don't remember. I don't know.

Q      You don't know. Who tossed the gun in your lap?

A      Jerry Cooper.

Q      Okay. You didn't see Shannon with the gun.

A      No.

* * *

Q      Are you afraid?

A      A little bit.

Q      Why?

A      Because I've never been . . .

Q      Has anybody threatened you?

A      Yes.

Q      About testifying?

A      Yes.

Id. at 103-05.

The jury found Cooper guilty as charged. The trial court then entered its judgment of conviction and sentence. This appeal ensued.

## DISCUSSION AND DECISION

Cooper asserts that the State failed to present sufficient evidence to support his conviction for unlawful possession of a firearm by a serious violent felon. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the verdict and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Cooper's only argument on appeal is that Buchanan's testimony is incredibly dubious. As our Supreme Court has explained:

> Appellate courts may . . . apply the "incredible dubiosity" rule to impinge upon a fact finder's function to assess the credibility of a witness. Application of this rule is very narrow and permitted only "where a sole witness presents inherently contradictory testimony that is equivocal or coerced and there is a lack of circumstantial evidence of guilt."

Turner v. State, 953 N.E.2d 1039, 1059 (Ind. 2011) (quoting Whedon v. State, 765 N.E.2d 1276, 1277 (Ind. 2002)). "Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." Love v. State, 761 N.E.2d 806, 810 (Ind. 2002). Cooper's argument fails to satisfy the requirements for the incredible dubiosity rule for a number of reasons.

8

First, Cooper acknowledges that the inconsistencies with Buchanan's statements are between her pre-trial statements and her statements during trial and that her statements during trial are not inherently contradictory. See Appellant's Br. at 7. Our Supreme Court has repeatedly refused to apply the incredible dubiosity rule between pre-trial statements and statements made during trial when the statements made during trial are consistent. See, e.g., Turner, 953 N.E.2d at 1059; Corbett v. State, 764 N.E.2d 622, 626 (Ind. 2002); Murray v. State, 761 N.E.2d 406, 409 (Ind. 2002). We will not deviate from that precedent here. Insofar as Buchanan's pre-trial statements were inconsistent with her statements at trial, her pre-trial statements opened the door for her impeachment, and Cooper's trial counsel thoroughly utilized that opportunity.

Second, while Buchanan occasionally waffled in her testimony, her testimony as a whole was not so "inherently improbable that no reasonable person could believe it." See Love, 761 N.E.2d at 810. She clearly and repeatedly stated that Cooper threw the gun in her lap after he panicked when Officer Lichtsinn initiated the traffic stop. She also explained the purported inconsistency with her deposition testimony by stating that she genuinely could not remember the incidents at the time she gave that testimony. Cooper's argument notwithstanding, Buchanan's trial testimony is not inherently improbable.

Finally, while Buchanan's testimony was critical to Cooper's conviction, the State did present other evidence. In particular, Officer Weaver testified that he found the firearm under the back seat where Buchanan had been sitting. Officer Weaver's testimony corroborated Buchanan's testimony. Moreover, because Buchanan had been granted immunity for her testimony there is no basis to support Cooper's assertion that her

9

testimony must have been coerced.  See Turner, 953 N.E.2d at 1059.  We affirm Cooper's conviction.

Although we affirm Cooper's conviction, in a footnote the State asserts that we must remand to the trial court to correct a sentencing error.  In particular, the State notes that, in imposing Cooper's sentence for being an habitual offender, the trial court described the habitual offender portion of Cooper's sentence as both an "enhance[ment]" and "a consecutive term."  Sentencing Transcript at 10.  The chronological case summary and the trial court's written sentencing order repeat that the habitual offender portion of Cooper's sentence is to be consecutive to his sentence for unlawful possession of a firearm by a serious violent felon.  Appellant's App. at 8, 29.  "It is well settled that a habitual offender finding does not constitute a separate crime, nor does it result in a separate sentence.  Rather, a habitual offender finding results in a sentence enhancement imposed upon the conviction of a subsequent felony."  Harris v. State, 964 N.E.2d 920, 927 (Ind. Ct. App. 2012) (citations omitted), trans. denied.  Accordingly, we remand for correction of the sentencing order so that it reflects that the habitual offender portion of Cooper's sentence is an enhancement of the underlying felony conviction.

Affirmed and remanded with instructions.

BAKER, J., and CRONE, J., concur.