# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 31 2018, 10:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Nappanee, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Monika Prekopa Talbot
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Eddie J. Bates, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 31, 2018 <br><br> Court of Appeals Cause No. 20A05-1712-CR-2791 <br><br> Appeal from the Elkhart Circuit Court <br><br> The Honorable Michael A. Christofeno, Judge <br><br> Trial Court Cause No. 20C01-1608-F3-36 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Eddie Bates (Bates), appeals his conviction for robbery while armed with a deadly weapon, a Level 3 felony, Ind. Code § 35-42-5-1(1); and for his adjudication as a habitual offender.

We affirm.

# ISSUE

Bates presents a single issue on appeal, which we restate as: Whether the victim's identification of him as the robber was incredibly dubious.

# FACTS AND PROCEDURAL HISTORY

On July 11, 2016, Theresa Palmer (Palmer) was working at the Dollar General store in Elkhart County, Indiana. The manager, Becky Mathiak (Mathiak), and another employee were present at the store that day, but were in the back of the store pulling down some items from the shelves. There were two registers in the front of the store, and Palmer conducted sales from the register that had been assigned to her.

At around noon that day, two men walked into the store. One of the men, later identified as Bates, asked where he could get a certain type of pencil, and the other man, later identified as Henry Bates (Henry), asked for cigarettes. Palmer walked to the cigarette case, obtained the requested cigarettes, and returned to the register. At that point, Henry had walked behind the counter and Palmer informed Henry that he needed to go the front of the counter to pay. Instead of

doing what Palmer had asked him to, Henry placed a knife on Palmer's back and ordered Palmer to "open the drawer" and that she "was being robbed." (Transcript Vol. II, p. 65). Henry then "reached in the drawer and took money out of it and then just took off."[1] (Tr. Vol. II, p. 65).

[6] While the robbery was taking place, Bates stood in the front of the counter watching. Before Palmer could close the register, Bates stated, "[D]on't close that. Lift it up; I want to see what you have underneath your drawer." (Tr. Vol. II, pp. 65-66). Palmer lifted the drawer and showed Bates that there was nothing underneath. Bates then instructed Palmer not to hit the panic button, but Palmer informed Bates that there was no panic button. Bates afterward ordered Palmer to open the other register, however, Palmer indicated that the register had been "assigned to a different cashier" with specific "codes" and there was no way she could "get into it." (Tr. Vol. II, p. 67). Bates then ordered Palmer to open a safe that was positioned between the two registers, but Palmer expressed that she "couldn't do that; it was on time delay." (Tr. Vol. II, p. 67). Bates asked Palmer if there were other employees present in the store, and Palmer stated that her manager Mathiak and another employee were

---

[1] Henry was subsequently charged with robbery and he pleaded "guilty in May of 2017." (Tr. Vol. II, p. 162).

in the back of the store. At that point, Bates ordered Palmer to take him to the store office. Upon entering the office, Bates demanded copies of the surveillance videos from Palmer. Palmer stated that she could not give him copies of surveillance videos because the "corporate office" conducted the recordings. (Tr. Vol. II, p. 68). Bates repeatedly threated Palmer by telling her that if she failed to follow to his commands, he would "get the other man," presumably Henry, to come "hurt" her. (Tr. Vol. II, p. 70). While talking to Palmer, Bates saw Mathiak's wallet on the desk. Bates took the wallet, rummaged through it, and retrieved some money. Before leaving the office, Bates reached up to "an electric box on the wall" that had an "antenna" and he "snapped the antenna off of it." (Tr. Vol. II, p. 71). Palmer assumed that Bates broke off the antenna to stop the surveillance cameras from recording. Before leaving, Bates ordered Palmer to sit in the office until he was out of the building, or he "would come back in with the other gentleman, and they would hurt" her. (Tr. Vol. II, p. 71). As soon as Bates walked out of the store, Palmer yelled for Mathiak. The Elkhart Police Department were immediately contacted.

[7]     The police released surveillance videos and still pictures of Henry and Bates to news media outlets and they sought tips about their identities. Both Bates and Henry wore hats during the robbery. The surveillance videos also appeared in an online newspaper. Detective Kirk Maggert (Detective Maggert) of the Goshen Police Department recognized Bates based on an encounter that occurred six days before the robbery. Detective Maggert contacted Detective

Scott Johnson (Detective Johnson) of the Elkhart Police Department. The police also received the names of Henry and William Lee (Lee) as possible suspects.

[8] Detective Johnson subsequently interviewed Palmer and he showed Palmer three photo lineups. From the first lineup, Palmer picked out Henry. In the second photo lineup, Palmer circled Lee's picture, and in the third photo lineup, Palmer circled Bates. Lee was also investigated, but when Detective Johnson spoke with Lee, he determined that Lee was not one of the robbers based on his facial features.

[9] About fifteen days after the robbery, Detective Johnson also spoke with Bates. During a recorded interview, Bates was *miranderized* and subsequently shown the still photograph depicting him and Henry robbing the Dollar General store. Bates responded by stating that "I thought it was me too." (Tr. Vol. II, p. 171). Bates then stated, "[I]f you look at the photograph, I never paid him no attention." (Tr. Vol. II, p. 171). Detective Johnson then played for Bates the surveillance video documenting the robbery. After watching the video, Bates, referring to Henry, stated, "I didn't know he had no knife." (Tr. Vol. II, p. 173). Also, after interviewing Bates, Detective Johnson again watched the surveillance video from the store and concluded that Bates was the man in the video.

[10] On August 19, 2016, the State filed an Information, charging Bates with robbery while armed with a deadly weapon, a Level 3 felony. On September

22, 2016, the State amended its Information because in the original filing it had alleged that Mathiak was the victim to the robbery. In the amended Information, the State replaced Mathiak's name with Palmer's. The same day, the State added a habitual offender charge against Bates, alleging that he had accumulated two prior unrelated felonies.

[11] A three-day jury trial was conducted on July 17 through July 19, 2017. Palmer again identified Bates as the robber from the same photo lineup that Detective Johnson had revealed to her during the police investigation. That photo lineup was admitted as Exhibit 11, and when Palmer was asked if she was sure that Bates was the perpetrator, Palmer testified that "there is no doubt" in her mind that Bates was the same person that robbed the store. (Tr. Vol. II, p. 104). At the close of the evidence, the jury found Bates guilty as charged. Bates then pleaded guilty to the habitual offender charge. On November 2, 2017, the trial court conducted a sentencing hearing. At the end of the hearing, the trial court sentenced Bates to serve sixteen years, and enhanced by twenty years based on the habitual offender adjudication, for an aggregate sentence of thirty-six years.

[12] Bates now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[13] Bates argues that there is insufficient evidence to sustain his conviction for his Level 3 felony robbery while armed with a deadly weapon because his conviction is based on Palmer's inherently contradictory testimony. Specifically, he argues that Palmer's "testimony . . . during trial was dubious"

because Palmer misidentified him in one of the photo lineups, and "there can be almost no question that this played a role in the jury developing unreasonable inferences that . . . . Bates was the suspect in the video surveillance tape." (Appellant's Br. p. 12).

[14] The "incredible dubiosity rule" provides that "a court may 'impinge on the jury's responsibility to judge the credibility of witnesses only when confronted with inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity.'" *Govan v. State*, 913 N.E.2d 237, 243 n. 6 (Ind. Ct. App. 2009) (quoting *Murray v. State*, 761 N.E.2d 406, 408 (Ind. 2002)), *trans. denied*. Application of this rule is rare, and "'the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.'" *Hampton v. State*, 921 N.E.2d 27, 29 (Ind. Ct. App. 2010) (quoting *Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007)), *trans. denied*. The rule applies only when a witness contradicts herself or himself in a single statement or while testifying, and does not apply to conflicts between multiple statements. *Manuel v. State*, 971 N.E.2d 1262, 1271 (Ind. Ct. App. 2012). Cases where we have found testimony inherently improbable have involved situations either where the facts as alleged "could not have happened as described by the victim and be consistent with the laws of nature or human experience," or where the witness was so equivocal about the act charged that his uncorroborated and coerced testimony "was riddled with doubt about its trustworthiness." *Watkins v. State*, 571 N.E.2d

1262, 1265 (Ind. Ct. App. 1991), *aff'd in relevant part*, 575 N.E.2d 624 (Ind. 1991).

[15]   At Bates's jury trial, the State introduced three photo lineups.  The first photo lineup was admitted as Exhibit 9 where Palmer had circled Henry as one of the robbers.  The second photo lineup that was admitted as Exhibit 10, Palmer had identified Lee as another perpetrator.  Finally, the third photo lineup that was admitted as Exhibit 11, Palmer had circled Bates as the other robber.  During her direct examination, Palmer testified the men who robbed the store wore hats.  She then testified that when she identified Bates in Exhibit 11, she expressed to Detective Johnson that "[I]f you put a hat on him, that's him right there." (Tr. Vol. II, p. 83).  During cross-examination, and referencing both Exhibit 10 (Lee's picture) and Exhibit 11 (Bates's picture), Palmer testified that she recalled informing Detective Johnson that the other perpetrator to the robbery would have either been "between those two." (Tr. Vol. II, p. 96).  However, if she "had to pick," she was certain that it was Bates and not Lee that robbed the store with Henry.  (Tr. Vol. II, p. 96).

[16]   Bates contends that Palmer's testimony on cross-examination that "it would have been between those two," meaning the robber was either Lee or Bates, is inherently dubious.  (Tr. Vol. II, p. 96).  We disagree.  Bates seems to be cherry picking the unfavorable portions of Palmer's testimony to support his dubiosity claim.  Even though Palmer picked two different people from the photo lineups, Palmer's subsequent statements in the same paragraph ousts any confusion.  Palmer stated that she remembered telling Detective Johnson that while it

would have been "between those two," Lee or Bates, she was "sure" that it was Bates who robbed the store. (Tr. Vol. II. p. 96). Then during redirect examination, the State again asked Palmer if she doubted her identification of Bates being the other Dollar General store robber, and Palmer stated, "[N]o, sir. There's no doubt." (Tr. Vol. II, p. 104).

[17] While Palmer picked two different individuals from the photo lineups, she unequivocally testified that she was sure that it was Bates and not Lee who robbed the store. *See Manuel v. State*, 971 N.E.2d at 1271. In addition, we note that there was not a complete lack of circumstantial evidence. Detective Maggert testified that six days before the robbery, he had an encounter with Bates, and he recognized his picture from the online newspaper. In addition, Palmer's testimony was corroborated by Detective Johnson's testimony who testified that after he interviewed Bates, he again watched the surveillance video, and he concluded that Bates was the other person who robbed the Dollar General store. Furthermore, during a recorded interview, and after watching the surveillance video, Bates implicated himself in the robbery by informing Detective Johnson that he "didn't know" that Henry had a "knife." (Tr. Vol. II, p. 173). Thus, we find that the incredible dubiosity rule is inapplicable in the present case and cannot serve as grounds for overturning the jury's verdict. Accordingly, we conclude that the State presented sufficient evidence beyond a reasonable doubt to convict Bates of Level 3 felony robbery while armed with a deadly weapon.

# CONCLUSION

[18] Based on the foregoing, we conclude that the principles of incredible dubiosity are inapplicable and the State presented sufficient evidence beyond a reasonable doubt to convict Bates of Level 3 felony robbery while armed with a deadly weapon.

[19] Affirmed.

[20] May, J. and Mathias, J. concur