## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 25 2018, 10:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Lyubov Gore
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jalen Humphries, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | September 25, 2018 <br><br> Court of Appeals Case No. 18A-CR-1115 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Lisa F. Borges, Judge <br><br> The Honorable Anne Flannelly, Magistrate <br><br> Trial Court Cause No. 49G04-1605-F5-19410 |

**Altice, Judge.**

### Case Summary

[1] Jalen Humphries appeals his conviction for Level 5 felony child solicitation. He contends that the victim's testimony was incredibly dubious and, therefore, the State presented insufficient evidence to support the conviction.

[2] We affirm.

## Facts & Procedural History

[3] Humphries, who was in his early twenties, moved into his father's Indianapolis home in April 2015. He lived there with his father, who was also L.T.'s grandfather (Grandfather), and several other family members. During the 2015-2016 school year, Grandfather regularly picked up his granddaughter L.T. from school and brought her back home until one of her parents could pick her up after work. L.T. spent time with Humphries, her paternal uncle, at the home and enjoyed playing games on his smartphone and watching movies.

[4] On one such afternoon on or near February 1, 2016, when L.T. was six years old, L.T. was in the living room when Humphries asked her to go with him into a back bedroom. L.T. sat on the bed as directed by Humphries, while he stood in front of her. Humphries told L.T. that he was going to give her a cookie. He then placed a pillow case partially over L.T.'s head. It "[k]ind of" covered her eyes, but L.T. could still see. *Transcript* at 30. Humphries then told her to "[o]pen but don't bite." *Id*. at 31. L.T. understood this to mean that he was going to "do something." *Id*. She opened her mouth as instructed, but she then "saw something bad" and put her arm in front of her mouth. *Id*. According to L.T., Humphries had his pants down and was holding "[h]is private" with both

hands. *Id*. After L.T. covered her mouth, she exclaimed, "That's not a cookie." *Id*. at 33. She was upset and pulled the pillow case off her head. At that point, Humphries's pants were pulled up and he had a cookie in his hand. He gave her the cookie, and L.T. threw it in the trash and ran out of the room. She did not say anything that day to Grandfather or others present because she was scared. A few days later, on February 4, 2016, L.T. pulled her mother aside at another relative's home and told her what happened with Humphries. Her mother immediately notified L.T.'s father, who contacted the police.

[5] On May 20, 2016, the State charged Humphries with Level 5 felony child solicitation (Count I) and Level 6 felony performing sexual conduct in the presence of a child (Count II). Humphries waived his right to a jury trial and was tried by the bench on March 9, 2018. L.T., who was eight years old at the time of trial, testified as set out above. Humphries testified in his own defense and denied the allegations. He did acknowledge, however, that he bought cookies once at the Dollar Store, which he kept at home and shared with L.T.

[6] At the conclusion of the bench trial, the trial court found Humphries guilty as charged but entered judgment of conviction only on Count I. When entering judgment, the trial court expressly noted, "I found LT's testimony to be very credible and very clear". *Id*. at 74. At the sentencing hearing on April 10, 2018, the trial court noted again that L.T. "was a very credible witness". *Id*. at 90. The trial court sentenced Humphries to the advisory sentence of three years in prison. Humphries now appeals.

## Discussion & Decision

[7] Humphries relies upon the incredible dubiosity rule in arguing that the evidence was insufficient to support his conviction. Specifically, he argues that L.T.'s testimony, which was the only testimony establishing the offense, was inherently contradictory and unsupported by circumstantial evidence.

[8] Application of the incredible dubiosity rule is extremely limited. Under this rule, we will impinge on the trier of fact's responsibility to judge the credibility of the witnesses only when confronted by "'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.'" *Moore v. State*, 27 N.E.3d 749, 755 (Ind. 2015) (quoting *Tillman v. State*, 642 N.E.2d 221, 223 (Ind. 1994)). "[W]hile incredible dubiosity provides a standard that is 'not impossible' to meet, it is a 'difficult standard to meet, [and] one that requires great ambiguity and inconsistency in the evidence.'" *Id.* at 756 (quoting *Edwards v. State*, 753 N.E.2d 618, 622 (Ind. 2001)). "The testimony must be so convoluted and/or contrary to human experience that no reasonable person could believe it." *Edwards*, 753 N.E.2d at 622.

[9] L.T.'s testimony on the witness stand was unequivocal and contained no inherent contradictions. She clearly testified regarding Humphries's actions on the afternoon in question. On appeal, Humphries questions how this could have happened in a "house full of relatives", why he would have proceeded with the alleged solicitation of L.T. with her eyes only partially covered, and how he was able to pull his pants up so quickly and hold a cookie after she

covered her mouth and removed the pillow case. *Appellant's Brief* at 10. None of these queries indicates that L.T.'s testimony was inherently contradictory. Further, although exceedingly disturbing, the facts as alleged by L.T. were not convoluted, improbable, or contrary to human experience. This is not a case in which the incredible dubiosity rule applies.

[10] Thus, it was for the trial court, as trier of fact, to resolve conflicts in the evidence and to decide which witnesses to believe or disbelieve. *See Murry v. State*, 761 N.E.2d 406, 409 (Ind. 2002). The trial court found L.T.'s testimony to be "very credible and very clear". *Transcript* at 74. This was the trial court's prerogative, and L.T.'s testimony was sufficient to support the conviction. *See Carter v. State*, 31 N.E.3d 17, 30 (Ind. Ct. App. 2015) ("the uncorroborated testimony of the victim, even if the victim is a minor, is sufficient to sustain a conviction"), *trans. denied*.

[11] Judgment affirmed.

Brown, J. and Tavitas, J., concur.