## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 10 2019, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristina L. Lynn
Wabash, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Edward Neil Schafer, | December 10, 2019 |
| *Appellant-Defendant,* | Court of Appeals Case No. 19A-CR-1111 |
| v. | Appeal from the Wabash Superior Court |
| State of Indiana, | The Honorable Amy C. Cornell, Judge |
| *Appellee-Plaintiff* | The Honorable Karen A. Springer, Judge Pro Tempore |
| | Trial Court Cause No. 85D01-1706-CM-697 |

**Altice, Judge.**

## Case Summary

[1]    Edward Neil Schafer appeals his conviction for Class A misdemeanor invasion of privacy. He challenges the sufficiency of the evidence.

[2]    We affirm.

## Facts & Procedural History

[3]    On August 23, 2016, the Wabash Superior Court entered an order for protection (the PO) against Schafer and in favor of Patrick E. Dingess, as well as Dingess's two sons. Dingess began dating Schafer's ex-wife, April Ceslick, in May 2016 and sought the PO based on allegations that Schafer had stalked him. The PO, which was effective until August 23, 2018, enjoined Schafer from, among other things, stalking, harassing, or contacting Dingess and ordered Schafer to stay away from Dingess's residence and place of employment.

[4]    On the evening of June 6, 2017, Schafer spoke with his father (Ed) and Jordan Wells. He was upset, believing that Dingess had abused one of Schafer and Ceslick's daughters. Schafer asked Ed and Wells to go to the local police department to obtain a copy of a statement he believed Ceslick had given to police earlier that day. Schafer then angrily left Ed's home, grabbed a baseball bat, and said, "I'm gonna kill this mother f**ker." *Transcript Vol. II* at 165. Prior to this, Schafer had accurately described to Wells where Dingess currently lived, which was different than the (former) address listed on the PO.

[5]    After Schafer left, Wells drove Ed to the Manchester Police Department where, around 9:30 p.m., they spoke to Officer Parker Stauffer and asked to see the statement. Wells warned Officer Stauffer that "[Schafer] was p*ssed about something and that it was concerning [Dingess] and they might want to be cognizant of it." *Id.* at 166-67. Ed's demeanor at the police department also worried Officer Stauffer. Officer Stauffer could not locate the information the men desired, and they left after Officer Stauffer spoke with them for a period of time and became "comfortable that Ed wasn't going to take action that night against Mr. Dingess." *Id.* at 185. Officer Stauffer encouraged Wells to attempt to calm Schafer down and to contact police if any potential conflicts arose.

[6]    Around 11:18 that same night, Officer Stauffer and other officers were dispatched to Dingess's home, where he lived with his young adult sons, Patrick and Caleb. Dingess was not home but his sons were. Patrick called 911 to report that Schafer was currently violating the PO by driving through the alley in front of their house, watching them, and yelling at them.

[7]    The events leading up to the 911 call, stated in the light most favorable to the verdict, are as follows. The Dingess home can be accessed only by a gravel alley that has three exit points. After dark, Ceslick drove to the home to visit Dingess, who would soon be home from work. She observed the headlights of another vehicle facing her in the alley and paused for it to pass but then realized that the vehicle was stopped in front of the Dingess home. She slowly moved forward and then the other vehicle moved toward her. As they pulled along side each other, Ceslick realized that Schafer was driving the other vehicle.

They made eye contact and then each sped away in opposite directions through the alley. Ceslick then immediately called Dingess.

[8] In the meantime, Caleb and Patrick had heard "commotion outside" the home, including loud music and vehicles in the alley. *Id.* at 58-59. They eventually stepped outside to investigate and saw as Ceslick sped away. They then called Ceslick, who told them that Schafer had been at the house and to call the police. Ceslick proceeded to drive around the block a few times, and Patrick observed her being followed by Schafer. Patrick called 911, as Caleb spoke over the phone with Dingess. Both had baseball bats for their protection. Schafer pulled into the alley and stopped down from the home during the 911 call and yelled at Caleb and Patrick.

[9] After about forty-five seconds, Schafer drove away as police officers arrived from another end of the alley. Officers located Schafer minutes later in a nearby park. He was outside of his vehicle holding a baseball bat. Schafer "seemed agitated" and claimed that he was just playing some baseball. *Id.* at 122. Officer Stauffer eventually arrived at the park and could not get Schafer calmed down enough to take a statement, so he told Schafer to leave because the park was closed.

[10] On June 13, 2017, the State charged Schafer with invasion of privacy, a Class A misdemeanor. Following a two-day trial, the jury found him guilty on April 10, 2019, and he was later sentenced to 365 days in the Wabash County Jail.

## Discussion & Decision

[11] On appeal, Schafer does not contest the fact that the PO was in effect on the day in question or that he was aware of its existence. Schafer claims only that the State failed to sufficiently establish that he knowingly or intentionally violated the PO.[1] Specifically, he contends that his contact that evening was with Ceslick, who was not covered by the PO, and that there was no credible, reliable evidence that he drove down the alley near the Dingess home.

[12] Schafer's argument ignores our well-established standard of review. As our Supreme Court has stated: "Convictions should be affirmed unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *T.H. v. State*, 92 N.E.3d 624, 626 (Ind. 2018). Thus, when reviewing the sufficiency of the evidence on appeal, we must consider only the probative evidence and reasonable inferences supporting the conviction, and we should not assess witness credibility or weigh the evidence. *See Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015). The trier of fact is entitled to determine which version of the incident to credit by resolving conflicts in the evidence and deciding which witnesses to believe or disbelieve. *See Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002); *Scott v. State*, 867 N.E.2d 690, 695 (Ind. Ct. App. 2007), *trans. denied*.

---

[1] Pursuant to Ind. Code § 35-46-1-15.1(a)(2), a person who knowingly or intentionally violates an ex parte protective order issued under I.C. 34-26-5 (like the PO in this case) commits invasion of privacy, a Class A misdemeanor.

[13]     The evidence favorable to the verdict establishes that Schafer was angry after learning of potential allegations involving his daughter and Dingess. He discussed the matter with his father and Wells, asked them to obtain information from the police department, and then left with a baseball bat and insinuated that he was going to take matters into his own hands. Schafer's actions prompted Wells to warn Officer Stauffer of Schafer's rage.

[14]     Shortly thereafter, Schafer drove into the alley and parked in front of the Dingess home, where he knew Dingess to live. Schafer drove off when Ceslick discovered him but then continued to follow her around the block multiple times as she frantically spoke with Dingess and then Patrick on the phone. Thereafter, Patrick called 911, and while he spoke with the dispatcher, Schafer returned to the alley, stopped short of the Dingess home, and yelled at Patrick and Caleb. Shafer left just before the police arrived. He then drove to a nearby park, where he was found minutes later holding a baseball bat outside his vehicle around 11:20 p.m.

[15]     The evidence amply supports Schafer's conviction, and we reject his improper invitation to reweigh the evidence and judge the credibility of the witnesses.

[16]     Judgment affirmed.


Robb, J. and Bradford, J., concur.